## Dzierski Estate.

Argued September 25, 1972. Before JONES, C. J., EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

*Norbert A. Michalski,* for appellant.

*James F. Manley,* with him *Burns, Manley & Little,* for appellee.

OPINION BY MR. JUSTICE POMEROY, November 17, 1972:

This appeal presents a familiar and recurring human drama. The executor of the estate of John Dzierski filed a petition for citation against the appellant, Mrs. Jean Maleski, daughter of the decedent, asking that she be ordered to turn over to the executor a sum of some $47,000, the sole discoverable asset of the estate. Appellant, however, based a claim to ownership of that fund on the fact that she was the surviving joint tenant of the balance in a savings account which had been held jointly with her father. After a hearing, the auditing judge ordered appellant and the savings and loan association in which the account was maintained to pay the balance to the executor of the estate. Exceptions were filed and overruled by a court *en banc* on March 29, 1972, and this appeal followed.[1] We affirm the turn-over decree.

The lower court found upon the evidence of record that undue influence had been practiced on the deceased by his daughter Jean and for that reason held invalid the purported gift transaction.[2] Appellant's

---

[1] Our jurisdiction is found in the Appellate Court Jurisdiction Act of 1970, Act of July 31, 1970, P. L. 673, art. II, §202(3), 17 P.S. §211.202(3) (Supp. 1972-73).

[2] Appellant filed exceptions to the opinion and order by Judge McKENNA and those exceptions were overruled by a court *en banc* of Judges McKENNA, BOYLE and RAHAUSER. The latter two were of

position is that the record does not contain the amount of or quality of evidence required to overcome the presumption of gift from father to daughter arising from the signature of the former on a joint account card. It is unnecessary, however, for us to reach the question of whether the record supports the lower court's finding of undue influence, as we are of the view that the evidence was sufficient to establish the kind of relationship which operates to shift from the personal representative to the purported donee the burden of proving that this transaction was intended by the father to be a gift. At the hearing on the executor's petition, Mrs. Maleski chose not to testify at all and objected, through her attorney, to being called by the executor. Consequently, the record is barren of evidence which would explain the circumstances under which Mrs. Maleski's signature came to appear on the account card. Her burden of proof, accordingly, has not been met.

It is the general rule in Pennsylvania that the burden of proving that a transfer of property such as that involved here was not a gift rests on the party so asserting (here the executor), and that the burden of proof is met only by the production of evidence of a clear, strong or compelling nature. *Treitinger Estate,* 440 Pa. 616, 269 A. 2d 497 (1970); *Null's Estate,* 302 Pa. 64, 153 A. 137 (1930). It is also the general rule that where a sole owner of a bank account converts the account into a joint one owned by himself and another, as evidenced by a duly signed signature card, the transaction is prima facie one of an inter vivos gift. The gift is of an undivided one-half interest in the account balance. Where, as here, the contract between the depository and the customers (i.e., the signature card)

---

the opinion that a confidential relationship existed which required appellant to carry the burden of proof.

provides for right of survivorship as between the two depositors, the gift includes the contingent right of the donee to the whole fund. *Berdar Estate,* 404 Pa. 93, 170 A. 2d 861 (1961); *Sivak Estate,* 409 Pa. 261, 185 A. 2d 778 (1962). Neither of these two general principles (i.e., the prima facie creation of a gift and the burden of proof placed on the presumed donor, or his representative, to show no gift) applies, however, "where the relation of the parties to each other, or some vicious element in connection with the transaction, is such that the law compels the recipient of the bequest or gift to show that it was the free, voluntary and intelligent act of the person giving it." *Weber v. Kline,* 293 Pa. 85, 87, 141 A. 721 (1928). The presence of a confidential relationship sufficient to shift the burden of proof to the alleged donee does not turn on the existence of any specific association of parties. *Leedom v. Palmer,* 274 Pa. 22, 117 A. 410 (1922). In *Kees v. Green,* 365 Pa. 368, 374-5, 75 A. 2d 602 (1950), we said that the burden will shift if "circumstances make it certain the parties do not deal on equal terms, but, on the one side there is an overmastering influence, or, on the other, weakness, dependence or trust, justifiably reposed. . . ." And we have always scrutinized "with a keen and somewhat incredulous eye" transactions by which a decedent shortly before his death strips himself of all his available property. *Wise's Estate,* 182 Pa. 168, 171, 37 A. 936 (1897).

It is not possible to state with precision that any single circumstance or group of circumstances will compel a finding of confidential relationship. See 9 Wigmore, Evidence §2503, at 364-66 (3d ed. 1940). And while the fact that the alleged donee was the child of the alleged donor does not of itself establish a confidential relationship as between the two, *Gerlock v. Gabel,* 380 Pa. 471, 112 A. 2d 78 (1955), additional facts may

require the child to shoulder the burden of proof. *Lochinger v. Hanlon,* 348 Pa. 29, 33 A. 2d 1 (1943). Perhaps all that can be said with certainty is that the normal rules respecting the burden of proof will not obtain where there is something in the relationship or circumstances of the donor and the donee that makes it doubtful that the normal presumption of a gift has any basis in reality. In our opinion, this is such a case.

The lower court made the following findings of fact, all of which are supported by evidence in the record and will therefore not be disturbed on appeal. *Pittsburgh Outdoor Advertising Co. v. Virginia Manor Apartments,* 436 Pa. 350, 260 A. 2d 801 (1970); *Stewart v. Watkins,* 427 Pa. 557, 235 A. 2d 604 (1967); John Dzierski, the deceased, had resided with his married daughter, Mrs. Jean Maleski, since 1966. In October of 1967, at age 80, he executed a will in which he left his estate in equal shares to his seven children. At that time he was alert, vigorous and in apparent good health. Although he spoke Polish as his native tongue, he also spoke English acceptably. In 1968, however, his condition began to deteriorate, both mentally and physically. He would visit the office of his attorney for no apparent purpose, on occasion attempting to press upon the lawyer money with which to pay bills already paid. He then lost his mastery of English, reverting to his native tongue, and could be communicated with only through an interpreter. He related to his attorney that he was afraid that his daughter, Mrs. Maleski, would have him arrested if he were to attempt to move away from her, that she prevented him from visiting with his other children. When he was visited on one occasion in 1969 by another daughter, he failed to recognize her. On June 22, 1970, the account which the deceased had previously maintained as an individual account was converted to a joint sav-

ings account with the appellant-daughter. John Dzierski died on February 26, 1971.

After the death of her father, Mrs. Maleski, although in sole possession of a fund of some $47,000 (the balance in the joint savings account), refused to pay or contribute to payment of the funeral expenses. She stated at the time: "I'm not going to pay it, that's not mine."

From these facts it appears that John Dzierski, at the approximate time of the transaction in question, was in a weakened state, both mentally and physically, and was dependent upon his daughter for his needs. The daughter, however, judging from her refusal to provide burial expenses, entertained no great affection for her father, and he, in turn, was suspicious of her intentions towards him. The alleged gift transaction was completed on a banking form printed in English only, while the deceased at the time was shown to be incapable of conducting his affairs in that language. We do not hesitate in concluding that on these facts the relationship and circumstances of the parties was such as to require Mrs. Maleski to carry the burden of proof, a burden she chose not to meet.[3]

Decree affirmed. Costs on appellant.

Mr. Justice MANDERINO concurs in the result.

---

[3] At the hearing on the executor's petition, the appellant's attorney objected to the admissibility of conversations and occurrences occurring during the lifetime of the deceased and testified to by the executor, citing Act of May 23, 1887, P. L. 158, §5, cl. (e), 28 P.S. §322. While that objection may have been well taken had the general rules on burden of proof and establishment of a prima facie gift prevailed, it is otherwise when the gift is not presumed valid and the burden of so proving is placed on the donee. *Donsavage Estate*, 420 Pa. 587, 218 A. 2d 112 (1966) ; *Rauenzahn v. Sigman*, 383 Pa. 439, 119 A. 2d 312 (1956).