435 A.2d 194

**William BANKO, Appellant,**

v.

**William MALANECKI and Gail Malanecki, a/k/a Gail Woodard, a/k/a Gail Banko.**

Superior Court of Pennsylvania.

Argued Nov. 12, 1980.

Filed Sept. 18, 1981.

Petition for Allowance of Appeal Denied Dec. 2, 1981.

12

Gary V. Skiba, Erie, for appellant.

Eugene J. Brew, Jr., Erie, for appellees.

Before HESTER, BROSKY and VAN der VOORT, JJ.

HESTER, Judge:

Presently before the court is appellant's appeal from the order of the lower court dated March 31, 1980, wherein the court *en banc* dismissed all exceptions[1] to the *Decree Nisi* previously filed and entered the same as a final decree.

During a non-jury trial, only the appellant testified. The salient facts may briefly be summarized as follows: In 1969, appellant's first wife of over twenty (20) years died. Thereafter appellant developed a serious drinking problem. In 1972, appellant met appellee and they dated until the later part of 1973 when it was agreed that appellant would move in with the appellee. They held a "wedding reception" in January of 1974 to convince people they had married (although in actuality they had not). Appellant listed *his* house for sale in November, 1973 and closed on it on April 23, 1974.

Trusting her "all the way," following the closing on his house (on the same day), appellant out of the proceeds of the closing (a) paid off appellee's mortgage in the exact amount of $2,195.18 and (b) paid off appellee's auto loan in the exact amount of $3,782.86. With respect to the mortgage:

1. Only appellant William Banko filed a timely appeal to the March 31, 1980 Order. Gail Malanecki, a/k/a Gail Woodward, a/k/a Gail Banko did not appeal. Moreover, William Malanecki, a party originally named, was dismissed from this action by stipulation of the parties and by Order of Court dated October 1, 1979.

Q  Why did you pay that off for Gail?

A  Because I loved Gail and like I said, I thought that we were going to live together and things were eventually going to work out and we were getting married.

Q  Did she actually ask you however to pay that bill?

A  No, she didn't.

(R 47a)

And in regard to the satisfaction of the auto loan:

Q  And again why did you make that payment?

A  Same as with the other payment.  I wanted to pay off because I felt that someday we would get married.

(R 47a)

In addition to (a) and (b) above, appellant also purchased new furnishings and furniture from Grant's in the approximate amount of $2,500.00 and contributed additional miscellaneous personalty from his recently sold home of a minimum value of $1,500.00 (total $4,000.00).

Within a week following the closing, the parties opened a joint savings account in the names "*William Banko and Gail Banko*"—husband and wife, as tenants by the entireties (Trial Exhibit # 3, both parties being signatories thereto. The original deposit was $3,300.00 (from the proceeds of the sale of the house), which subsequently grew by $300.00 (appellant's IRS refund check) and by $1,600.00 (appellant's six week vacation check), to a total of $5,200.00 by June 21, 1974.

During the period of time the parties lived together (January to July, 1974), both were gainfully employed; when appellant received his pay check he would turn it over to the appellee, retaining only $10.00 per week as spending money. Appellee in turn paid all normal monthly bills and expenses.

In July, things started to change, "pressure" started to build, and appellant started to drink.  Three or four days later, following an argument, appellee told appellant to leave—to get out—and he did.  Subsequently, appellant was hospitalized, and then spent 28 days at Serenity West.  Following discharge, appellant moved to the Penn Motel.  Appellee corresponded and visited infrequently.

In November, 1974, appellee (with William Malanecki) visited appellant and told him they were married. "She wanted me to wish them good luck, which I did, and not to bother them." (R 56a).

On July 9, 1974, appellee, signing as "Gail Banko", withdrew all of the funds from the entireties savings account ($5,232.21 consisting of $5,200.00 principal and $32.21 accumulated interest).

Appellant brought suit in equity against the appellee for the full return of the monies expended on alternate equitable theories of breach of a confidential relationship, breach of an implied covenant agreement between the parties, and on the theory of unjust enrichment. In an effort to reach equity, appellant requested monetary damages, the imposition of an equitable lien, a constructive trust, and a full accounting.

The Chancellor decreed:

(a) Appellant is not entitled to recover the monies spent to pay off either the mortgage or the auto loan;

(b) Appellant is entitled to one-half the furniture or one-half its value; and

(c) Appellant is entitled to one-half the savings account funds.

We affirm in part and reverse in part.

We affirm the final order of the lower court which found that appellant is not entitled to recover the monies spent to pay off either the mortgage or the auto loan. The record is barren of any evidence which rebuts the presumption that said payments were intended as *inter vivos* gifts. Nor was evidence produced demonstrating that the relationship, at that time, was such that said "presumption of *inter vivos* gifts" was inapplicable, thus shifting the burden to the donee/appellee to *prove* that said payments were the voluntary acts of the donor/appellant.

We also affirm that portion of the appealed-from order which founded on the rationale of *DiFlorido v. DiFlorido*, 459 Pa. 641, 331 A.2d 174 (1975), concluded that appel-

lant is entitled to one-half the furniture, or one-half its value in the instant case. Because of the time lapse involved, the expected normal depreciation of personal property, and the fact that appellee has had the exclusive and beneficial use of same since 1974 (excepting the parties' joint use from January to July, 1974), we direct that this portion of the order be molded to reflect an award of $2,000.00 plus interest from July of 1974.

However, we reverse that portion of the appealed-from order which concludes that appellant is entitled to one-half of the savings account funds. We conclude that appellant is entitled to all of the proceeds from the savings account ($5,232.21) plus interest from July, 1974.

■ It is undisputed that the parties were never formally married. However, marriage is an *indispensible element* of the existence of an *estate by the entireties*. See *Masgai v. Masgai*, 460 Pa. 453, 333 A.2d 861 (1975); *Simpson v. Simpson*, 404 Pa. 247, 172 A.2d 168 (1961); *Pa. Bank and Trust Co. v. Thompson*, 432 Pa. 262, 247 A.2d 771 (1968).

■ The Union Bank savings account was opened (on April 26, 1974) by the parties as *husband and wife—as tenants by the entireties*. Additionally, appellee affirmed this status by affixing her signature on the line where the words *signature of wife* appeared by signing "Gail Banko."

Appellant testified that he "trusted" the appellee; that she handled the parties' financial affairs, and that he thought they eventually would marry. We are of the opinion that in April of 1974 when appellee represented to the bank that she was appellant's wife, this representation has sufficient probative value to establish the existence of a confidential relationship between them with respect only to the creation of the savings account.

As our Supreme Court opined in *Estate of Dzierski*, 449 Pa. 285, 289, 296 A.2d 716, 718 (1972);

Neither of these two general principles (i. e., the prima facie creation of a gift and the burden of proof placed on the presumed donor, or his representative, to show no gift)

applies, however, "where the relation of the parties to each other, or some vicious element in connection with the transaction, is such that the law compels the recipient of the bequest or gift to show that it was the free, voluntary and intelligent act of the person giving it." *Weber v. Kline*, 293 Pa. 85, 87, 141 A. 721, 722 (1928). The presence of a confidential relationship sufficient to shift the burden of proof to the alleged donee does not turn on the existence of any specific association of parties. *Leedom v. Palmer*, 274 Pa. 22, 117 A. 410 (1922). In *Kees v. Green*, 365 Pa. 368, 75 A.2d 602 (1950), we said that the burden will shift if "circumstances make it certain the parties do not deal on equal terms, but, on the one side there is an overmastering influence, or, on the other weakness, dependence, or trust, justifiably reposed...."

In *Yohe v. Yohe*, 466 Pa. 405, 411–412, 353 A.2d 417, 420–21 (1976), our Supreme Court stated:

The imposition of a constructive trust is an equitable remedy designed to prevent unjust enrichment. (Citations omitted). A constructive trust arises "[w]here a person holding title to property is subject to an equitable duty to convey it to another on the ground that he would be unjustly enriched if he were permitted to retain it. (Citations omitted). A transferee is under such an equitable duty to reconvey property to the transferor if the transfer was induced by fraud, duress, undue influence, or mistake, or if the transfer was the result of an abuse of a confidential relationship. *Chambers v. Chambers*, 406 Pa. 50 at 54, 176 A.2d 673 at 675.

We conclude that with respect to the creation of the saving account, contrary to the Chancellor's finding, the record does reflect the existence, at that time under consideration, of a confidential relationship. Accordingly, it was incumbent upon the appellee to demonstrate that she did not abuse that relationship.

Appellee did not testify.

We are also convinced that appellee's subsequent act of *withdrawing all* of these funds on July 9, 1974, the same

month that she demanded appellant remove himself from her home, is relevant in demonstrating the existence and subsequent abuse of a confidential relationship.

We therefore conclude that the appellee took possession of the savings account in question on July 9, 1974 in the amount of $5,232.21 as a constructive trustee and therefore we reverse that portion of the order of the lower court and enter an award in favor of the appellant and against the appellee in the amount of $5,232.21 plus interest from July of 1974.

We therefore affirm in part and reverse in part and direct judgment be entered in favor of the appellant and against the appellee in a total sum of $7,232.21 plus interest from July of 1974.

Affirmed in part and reversed in part.

BROSKY, J., filed a concurring and dissenting opinion.

BROSKY, Judge, concurring and dissenting:

I concur in the majority's affirmance of that portion of the lower court's order holding that appellant is not entitled to recover the monies spent to pay off appellee's mortgage and auto loan, on the theory that said payment was intended as an *inter vivos* gift to appellee. The two requisite elements of an *inter vivos* gift were met here: the intention on appellant's part to make an immediate gift to appellee, and delivery to appellee that divested appellant of dominion and control of the money. *Hengst v. Hengst*, 491 Pa. 120, 420 A.2d 370 (1980).

However, I dissent from the majority's affirmance of the lower court's decision to award appellant one-half the furniture, or one-half its value. The majority appears to rely upon *DiFlorido v. DiFlorido*, 459 Pa. 641, 331 A.2d 174 (1975), a case involving a husband and wife, which is not our situation here. *DiFlorido* concerned an action in replevin brought by appellee-wife, after the parties were divorced, seeking to recover certain personal property and household furnishings accumulated prior to and during the parties' marriage.

The lower court in *DiFlorido* had directed appellant to, *inter alia*, pay over to appellee one-half of the appraised value of the household goods and furnishings. Appellant-husband contended in part that since he was the sole provider during the marriage and since household goods found in the joint possession of husband and wife presumptively belong to the husband, the appellee should have been found to have no interest in those household goods which the lower court determined to be held by both parties as tenants in common.[1] The Pennsylvania Supreme Court held that although the household furnishings were, with one exception, purchased with appellant's earnings, both spouses had nonetheless shared the use and possession of the furnishings during the marriage. Challenging the common law presumption that a husband is the owner of the household furnishings, in light of the clear intent of the Equal Rights Amendment, the Supreme Court held that

> [f]or the purpose of determining title of household goods and furnishings *between husband and wife* the property that has been acquired in anticipation of or during marriage, and which has been possessed and used by both spouses, will, in the absence of evidence showing otherwise, be presumed to be held jointly by the entireties. (Emphasis added.)

*Id.*, 459 Pa. at 651, 331 A.2d at 180.

The court based its holding in part upon its belief that neither party should be burdened with proving that such household items were donated to the marital unit.

Clearly, the Supreme Court in *DiFlorido* was concerned with the status of the parties as (former) husband and wife. The court was confronted with application of the common-law presumption that a husband is the owner of the household goods, which was based upon earlier societal conditions when few women worked outside the home. For this reason, the *DiFlorido* case is inapposite here, since it clearly is founded upon the marital relationship.

1. The lower court held that both parties intended to donate the household furnishings to the "marital unit" and that upon their divorce, the items belonged both parties as tenants in common.

In the case at bar, the parties were not married at the time the household furnishings in question were purchased, nor did they marry thereafter. Therefore, the situation is no different from that of two roommates. The fact that the parties here are male and female should not influence our decision. In the absence of marriage, or a viable contract such as was alleged in *Marvin v. Marvin*, 18 Cal.3d 660, 134 Cal.Rptr. 815, 557 P.2d 106 (1976), ownership of household furnishings should depend upon title. Here, appellant purchased all of the furnishings with his own funds, and therefore is entitled to them, or to their value, accounting for depreciation.

As to the joint bank account, it is my position that appellant should only be entitled to one-half of the funds. The parties opened the account as "husband and wife," a fraudulent act since they were not in fact husband and wife. Although we should not legitimize this fraudulent act, we must view it for what it is—as evidence of intent on the part of both parties to open a joint account. From the record it is clear that the account was opened with the intent that it be used by both *for the benefit of both.* Therefore, although the act of signing as husband and wife was fraudulent, it does not alter the fact that the parties intended that the savings account be a joint account. There is no doubt that the rights of each tenant to a joint bank account are the same even where one tenant contributes the entire sum to the account. *In re Cochrane's Estate*, 342 Pa. 108, 20 A.2d 305 (1941). It is equally clear that a joint tenancy is severable by the action, voluntary or involuntary, of either of the parties, and the effect of severance is to make the parties tenants in common. *Hayes v. Stephenson*, 192 Pa. Super. 392, 161 A.2d 900 (1960).

In *In re Beniger's Estate*, 449 Pa. 373, 296 A.2d 773 (1972), our Supreme Court held that where joint tenants have the power to withdraw the funds deposited in a joint account, the power must be exercised for the benefit of both tenants. In *Estate of Allen*, 488 Pa. 415, 412 A.2d 833 (1980), the Pennsylvania Supreme Court held that a son's act of with-

drawing funds from a savings account of which he and his father were joint tenants, without his father's knowledge or consent, and thereafter refusing to surrender the funds was in bad faith and terminated the joint tenancy, thereby creating a tenancy in common. In *Carson's Estate*, 431 Pa. 311, 245 A.2d 859 (1968), the Supreme Court held that where one of the joint tenants appropriates jointly held property for his own exclusive use, the joint tenancy is severed and becomes a tenancy in common.

Here, the record shows that the bank account was opened April 30, 1974. On July 9, 1974, just two months later, appellee withdrew all of the funds and did not share them with appellant. Four months later, she informed appellant of her marriage to William Malanecki.

While I do not agree with the majority's finding that there was a confidential relationship, I do find that appellee's act of withdrawing all the funds from the savings account was in bad faith, since she did not withdraw the funds for the mutual benefit of both parties, but rather, for her own exclusive use. The act severed the joint tenancy and replaced it with a tenancy in common. I, therefore, dissent from the majority's decision to award appellant the entire amount of the account, and would instead award him one-half of the funds, due to his status as a tenant in common.

I do not find the existence of a confidential relationship here. The majority cites *Estate of Dzierski*, 449 Pa. 285, 296 A.2d 716 (1972), for the proposition that a confidential relationship may be found to exist if

> [c]ircumstances make it certain the parties do not deal on equal terms, but, on the one side there is an overmastering influence or, on the other, weakness, dependence or trust, justifiably reposed. . . .

Here, the record does not show that appellee had an "overmastering influence" on appellant, or that he was unduly dependent upon her. Appellant was financially independent, even if he willingly gave appellee his paychecks to pay bills. The fact that he trusted her does not, by itself,

warrant the finding that there was a confidential relationship. It is hoped and expected that two persons who are friends will trust one another. Other than having a drinking problem, appellant was not infirm or in such condition at the time of the relationship so as to have to depend upon appellee to such an extent as would warrant a finding of a confidential relationship.

As to this matter, therefore, I dissent and would hold that appellant is only entitled to one-half of the savings account fund.

Accordingly, I concur in the majority's holding that the monies spent by appellant to pay off appellee's loans were intended as a gift and therefore not recoverable by appellant; and dissent from the majority's holding that appellant is entitled to one-half the value of the furniture, and to all the proceeds from the savings account.