451 A.2d 1008

**William BANKO**

v.

**William MALANECKI and Gail Malanecki, a/k/a Gail Woodard, a/k/a Gail Banko.**

**Appeal of Gail MALANECKI.**

Supreme Court of Pennsylvania.

Argued Sept. 21, 1982.

Decided Nov. 4, 1982.

94

---

Eugene J. Brew, Jr., Erie, for appellant.

Gary V. Skiba, Colussi, Yochim, Skiba & Vogel, Erie, for appellee.

Before O'BRIEN, C.J.; and ROBERTS, NIX, LARSEN, FLAHERTY, McDERMOTT and HUTCHINSON, JJ.

OPINION

LARSEN, Justice.

In January 1974, appellant Gail Malanecki, and appellee, William Banko, began living together in Malanecki's home. Banko then moved some new and used furniture valued at $4,000 into Malanecki's home. Banko also satisfied Malanecki's outstanding car loan and house mortgage.[1] On April 26, 1974, Banko deposited $3,300 into a joint bank account. The deposit contract with the bank was signed by Banko and Malanecki as husband and wife.[2] Banko made two more deposits in this account totaling $1,900. In July, 1974, the relationship ended. After Banko departed, Malanecki withdrew all of the funds in the bank account for her own benefit and retained possession of the furniture placed in her home by Banko.

On May 29, 1975, Banko filed a complaint in equity in which he sought reimbursement for the following: the money that he deposited in the joint bank account; the money he expended to satisfy Malanecki's debts; and the furniture that he put in Malanecki's home. On February 11, 1980, the chancellor ordered that Malanecki return one-half the money deposited in the joint bank account to Banko. The chancellor further ordered that Malanecki return one-half the furniture or one-half its value to Banko plus interest from July 1974.[3] On March 31, 1980, the equity court en banc denied the exceptions filed by both parties, and Banko filed a direct appeal to the Superior Court. The Superior Court reversed the chancellor's order concerning the bank account and awarded Banko the full amount of money that he deposited. Further, the Superior Court affirmed the chancellor's decision concerning the furniture but modified the award to

1. The balance of Malanecki's house mortgage was $2,195.18, and the balance of her car loan was $3,782.86.

2. Malanecki signed the deposit contract as Gail Banko.

3. The chancellor also found that Banko was not entitled to be reimbursed for the money he expended to satisfy Malanecki's car loan and house mortgage. The Superior Court affirmed this portion of the chancellor's order.

reflect that Banko is entitled to one-half the value of the furniture plus interest from July, 1974. *Banko v. Malanecki,* 291 Pa.Super. 11, 435 A.2d 194 (1981). This Court granted Malanecki's petition for allowance of appeal on December 2, 1981.

The first issue raised in this appeal is whether Banko made a gift to Malanecki of a joint interest in the bank account. The Superior Court held that Banko did not make such a gift to Malanecki because a confidential relationship existed between them. We disagree.

When two parties sign a contract with a bank that creates a joint interest in a bank account with the right of survivorship, there is prima facie evidence of the intent of the party funding the account to make an inter vivos gift to the other joint tenant. *Estate of Gladowski,* 483 Pa. 258, 396 A.2d 631 (1979). In this case, Malanecki and Banko signed a contract with the bank that created a joint interest in the account with the right of survivorship,[4] and this bank account was funded entirely by Banko. Consequently, prima facie evidence exists that Banko intended to make an inter vivos gift to Malanecki of a joint interest in the bank account.

Once prima facie evidence of a gift is established, a presumption arises that the gift is valid, and the burden is then on the contestant to rebut the presumption by clear, precise and convincing evidence. *Estate of Clark,* 467 Pa. 628, 359 A.2d 777 (1976). The presumption is rebutted if it is established that a confidential relationship existed between the donor and donee at the time of making of the alleged gift. *Estate of Clark, supra.*

A confidential relationship exists if the parties do not deal on equal terms "...but, on the one side there is an overmastering influence, or, on the other, weakness, depend-

4. The parties attempted to create a "tenants by the entirety" bank account. However, since they were not married, they in fact created a joint tenancy in the bank account. *Maxwell v. Saylor,* 359 Pa. 94, 58 A.2d 355 (1948).

ence, or trust, justifiably reposed...." *Estate of Dzierski,* 449 Pa. 285, 296 A.2d 716 (1972). If it is established that a confidential relationship existed at the time of the making of the alleged gift, the burden shifts to the donee to establish that the alleged gift was free of any taint of undue influence or deception. *Estate of Clark, supra.*

The Superior Court found that a confidential relationship existed between the parties because Malanecki represented to the bank that she was Banko's wife. The fact that Malanecki signed the deposit contract as Banko's wife is in no way probative of whether a confidential relationship existed between Banko and Malanecki at the time the bank account was opened.[5] In addition, no other evidence was put forth by Banko that would establish the existence of a confidential relationship between him and Malanecki.[6] Consequently, we find that Banko made a gift to Malanecki of a joint interest in the bank account.[7]

The second issue raised is whether Malanecki acquired a joint interest in the furniture placed in her home by Banko. The Superior Court concluded that Malanecki did acquire such an interest based upon this Court's decision in *DiFlorido v. DiFlorido,* 459 Pa. 641, 331 A.2d 174 (1975). We disagree.

5. This Court has not totally invalidated attempts to create a tenancy by the entirety interest merely because an unmarried man and woman misrepresent that they are married, but has held that a joint tenancy is created. *Maxwell v. Saylor,* 359 Pa. 94, 58 A.2d 355 (1948).

6. In support of his position Banko argues that he trusted Malanecki. There is no indication that this trust was anything more than the normal trust between a man and woman in an intimate relationship.

7. Malanecki withdrew the entire amount of funds from the account for her own benefit. When one joint tenant withdraws funds from a joint bank account with the purpose of depriving the other joint tenant of use or title to the funds, the joint tenancy is terminated and a tenancy in common is created. *Estate of Allen,* 488 Pa. 415, 412 A.2d 833 (1980). A tenant in common of a bank account is entitled to one-half the funds that were in the account at the time of the improper withdrawal. *Estate of Allen, supra.*

In *DiFlorido* this Court held that household goods purchased by a husband and used during the marriage by both spouses are presumed to be the property of both spouses "held jointly by the entireties". There is nothing in *DiFlorido* that would indicate that the same rationale applies to unmarried people living together. In *DiFlorido* we rejected the common law rule that a husband is the sole owner of household furnishings. In effect, this Court said such property belongs to the marital unit. Clearly such a theory does not apply to the present case.

■ Banko owned all of the furniture valued at $4,000.00 that he placed in Malanecki's home. There is no evidence that he intended to give any interest in the furniture to Malanecki. Consequently, Malanecki did not acquire a joint interest in the furniture.

We therefore reverse the Superior Court's order concerning the bank account and award Banko one-half the funds in the bank account ($2,600) plus interest from July 1974. In addition, we reverse the Superior Court's order concerning the furniture and award Banko the full value of the furniture ($4,000) plus interest from July 1974.

ROBERTS, J., filed a concurring opinion.

ROBERTS, Justice, concurring.

I concur in the result. This record is devoid of support for the chancellor's determination that the parties "did plan to marry." Indeed, although appellee William Banko testified that he had hoped that he and appellant Gail Malanecki would eventually marry, it was appellee's own testimony that appellant "didn't want to get married." Thus, it cannot be concluded that the proceeds from the sale of the former Banko residence were in any respect applied by appellee "in anticipation of . . . marriage." *DiFloridio v. DiFloridio* 459 Pa. 641, 651, 331 A.2d 174, 180 (1975).*

---

* Although the majority does not specifically address whether appellee is entitled to relief with respect to his satisfaction of appellant's car loan and house mortgage, it is clear that the Superior Court properly denied appellee relief on these claims.

As to appellee's claim that he shared a "confidential relationship" with appellant, appellee's own evidence established that his application of the proceeds was not pursuant to the plan or direction of appellant, but rather in accordance with his hope that his unilateral desire for marriage would more readily be shared by appellant. Because appellee's own evidence affirmatively establishes that the transactions were unaffected by the claimed confidential relationship, see, e.g., *Kees v. Green,* 365 Pa. 368, 375, 75 A.2d 602, 605 (1950), appellee's effort to set aside the transactions on a theory of confidential relationship is defeated. See 9 Standard Pennsylvania Practice 2d § 58:43 (1982).