## Miller v. Miller

*Norman A. Krumenacker, III,* for plaintiff.
*Jon A. Barkman,* for defendant.

COFFROTH, *P.J.,* August 2, 1984—This partition action is here on defendant's exceptions to the trustee's (first) report challenging its findings and conclusions on various grounds. The trustee is William R. Carroll, Esq.

The action is for post-divorce partition of real and personal property, and is therefore governed by the Act of 1927 P.L. 884, as amended by Act of 1949 P.L. 1394, 68 P.S. §§501 et seq., also amended by Judicial Code §20002(a) [1092]. Koba v. Koba, 41 Somerset L. J. 249, 254 (1981). The 1949 amendment introduced automatic conversion upon divorce of entireties property into tenancy in common, which is applicable only to property acquired by the entireties subsequent to the effective date of that act, as in this case. Keen By Van Kleef v. Keen, 315 Pa. Super. 161, 461 A.2d 846 (1983); Morehead v. Overton, 39 D.&C.2d 595 (1965). The parties were married April 25, 1954, and divorced May 10, 1979.

In accordance with this court's direction of September 27, 1983, the trustee's first report deals only with identifying how the various items of property are owned by the parties and thereby determining what property is entireties property and as such subject to the action, and the proposed decree attached to the report makes that determination, to which defendant (former husband) has filed the pending exceptions.

Running through all or most of the exceptions is a challenge to the trustee's application of a rule that ". . . any property acquired in anticipation or during

marriage and possessed and used by both spouses is presumed to be held as joint property by the entireties unless contrary evidence of intent is adequately demonstrated", citing DiFlorido v. DiFlorido, 459 Pa. 641, 331 A.2d 174 (1974), thus placing a burden of proof upon the party challenging entireties ownership, primarily defendant. Since it is acknowledged that the real estate of the parties is held by the entireties, the question of the presumption relates here only to ownership of personal property.

We must agree that the trustee may have stated DiFlorido's presumption too broadly. As the court there stated (459 Pa. at 651):

"We conclude, therefore, that for the purpose of determining title of household goods and furnishings between husband and wife, the property that has been acquired in anticipation of or during marriage, and which has been possessed and used by both spouses will in the absence of evidence showing otherwise be presumed to be held jointly by the entireties."

In that case, the contested items consisted only of household goods and furnishings; footnote 6 of the opinion states:

"6. The household goods and furnishings which were involved in the instant case consisted inter alia of furniture, appliances, carpeting and kitchen utensils. For an explanation of the various items that are included in the term 'household goods and furnishings' see generally household goods, 19A at Words and Phrases, pages 510-514."

Accordingly, the court had no occasion to state whether the presumption might also be applicable to personal property other than household items and did not do so. From that omission, it can be concluded that the way is left open to extend the presump-

tion to all types of property "acquired in anticipation of or during marriage", but it is clear that DiFlorido did not so extend it, and no other judicial decision has done so.

The trustee does not articulate his reasons for extending the DiFlorido presumption beyond household goods and furnishings to other types of property acquired in anticipation of and during marriage; the explanation most likely lies in the fact that DiFlorido's logic, buttressed by societal and judicial recognition of the modern concept of the "equal marital partnership", lead almost inexorably to that conclusion.

Before discussing possible extension of DiFlorido beyond marital household goods and furnishings, we should place that decision in historical and present perspective. The following propositions state the historical development and present status of law governing ownership of personalty acquired in anticipation of or during marriage by cohabiting spouses:

(1) At common law, spousal ownership of personal property was based on the "marriage entity concept". DiFlorido, 648. That concept is explained in note 9 of DiFlorido as follows:

"9. The marriage entity concept refers to the belief that "[b]y marriage the husband and wife are one person in law." 1 W. Blackstone Commentaries * 442. Since the husband was considered the lord and master of his wife, all personalty acquired by her during marriage belonged to her husband, while that acquired by the husband was solely his. See 102 U. of Pa. 258 (1954) citing 2 F. Pollock and F. Maitland, The History of English Law, 405, 427 (2d ed. 1898) and DuPont v. DuPont, 33 Del.Ch. 571, 574, 98 A.2d 493, 494 (1953)."

See also Summary of Pennsylvania Jurisprudence, Domestic Relations §171. The foregoing expresses Pennsylvania law on the subject until 1848.[1]

(2) The Act of 1848 P.L. 536, 48 P.S. §64, abolished the husband's special common law rights in the wife's separate personalty as well as his estate de jure uxoris in the wife's realty (see footnote [1] supra), but was construed as being inapplicable to the wife's earnings which continued to be subject to the control of the husband as at common law until 1872. Summary of Pennsylvania Jurisprudence supra, §176.

---

1. The husband's rights in the wife's real property at common law are described in Summary of Pennsylvania Jurisprudence, supra, §174 as follows:

§174.—Estate de jure uxoris in wife's real estate."

"In applying the concept of the unity of the spouses to real property which belonged to the wife at the time of the marriage or which she thereafter acquired during coverture, the common law did not make such real estate either the absolute property of the husband, nor permit it to be retained by the wife as her separate property. Instead, the common law took the intermediate position of carving out of the wife's interest, a separate estate for the husband known as his estate de jure uxoris. See Benedict v. Montgomery (1844) 7 Watts & S 238, 42 Am. Dec. 230; 26 Am Jur 684, Husband and Wife §55. The incidents of this estate were that during the continuance of the coverture, the husband was entitled to the beneficial enjoyment of the property, i.e. to all the rents, issues and profits therefrom. This estate de jure uxoris of the husband which he thus acquired in his wife's land was a recognized property right which he could sell and transfer to others without consulting with his wife, and which could be seized by creditors of the husband for his debts. Upon termination of the coverture the estate de jure uxoris terminated, and the reversionary interest remained in the wife or her heirs, subject to the husband's right of courtesy, if he happened to survive her. (See §177 infra.)"

(3) The Act of 1872 P.L. 35, 48 P.S. §34, expressly secured to the wife her earnings free from any legal claim of her husband.[2]

(4) Notwithstanding the foregoing, the courts retained a rebuttable presumption that the husband owned personal property in the possession of the husband, or in the common possession of husband and wife, including household goods prior to DiFlorido (649-650). PLE, Husband and Wife §65; Kauffman v. Stenger, 151 Pa. Super. 313, 30 A.2d 239 (1943), farm animals; Dura Seal Products Co., Inc. v. Carver, 186 Pa. Super. 425, 140 A.2d 844 (1958), household goods in possession of husband and wife in home owned by wife, but compare Gumbes Estate, 172 Pa. Super. 59, 62, 92 A.2d 265 (1952). "A wife can overcome this presumption by

See also Baer Estate, 41 Somerset L. J. 171, 177-8, 3 Fid. 2d 188 (1982). The common law rule giving the wife's personalty to the husband applied also to items in her actual possession at the time of marriage, except her "paraphernalia" (wearing apparel and jewelry) and her choses in action, which remained hers subject to her husband's legal right to appropriate them to his own use if he wished. Summary of Pennsylvania Jurisprudence supra §§172-173.

2. The Acts of 1848 and 1872 supra, followed by a series of later similar acts (1887 P.L. 170, 1893 P.L. 344, 1945 P.L. 625, 1947 P.L. 352, and 1951 P.L. 1416, 48 P.S. §§31-32, all repealed), culminating in the Act of 1957 P.L. 969, 48 P.S. §32.1, known as the Married Women's Property Acts abolished the common law concept of the "marital entity". DiFlorido, 648-649. The Act of 1957 provides as follows:

"§32.1 Property and contract rights of married women"

"Hereafter, a married woman shall have the same right and power as a married man to acquire, own, possess, control, use, convey, lease or mortgage any property of any kind, real, personal, or mixed, either in possession or in expectancy, or to make any contract in writing or otherwise, and may exercise the said right and power in the same manner and to the same extent as a married man."

evidence that she paid for or inherited the furniture [or other personalty], or acquired it by gift, or that they jointly paid for it, or by any other evidence sufficient to prove ownership." King Estate, 387 Pa. 117, 127-128, 126 A.2d 463 (1956); Mulligan Estate, 426 Pa. 374, 376, 232 A.2d 758 (1967). DiFlorido changes the presumption as to household goods and furnishings in the common home in two respects: (a) such personalty is now presumed to be owned jointly by the spouses by the entireties, and (b) the presumption cannot be rebutted by proof of funding alone; ". . . to refute the presumption, there must be evidence that the parties intended one or the other rather than both, to be the owner." Hogue v. Hogue, 31 Somerset L. J. 306, 308 (1975).[3]

(5) The essentials of a gift inter vivos, whether between spouses or other persons, are well known: donative intent, delivery and acceptance. See Kolcun Estate, 42 Somerset L. J. 218, 231-232 (1983). Contributions by either spouse to the acquisition of entireties property are presumed a gift to the other (or to the marital entity). Butler v. Butler, 464 Pa. 522, 347 A.2d 477 (1975).[4] Delivery is not

---

3. A common mode of expression is that the purchaser of the household property is presumed to have made a gift to the "marital unit". DiFlorido, supra, 648, 651; Butler v. Butler, 464 Pa. 522, 530, 347 A.2d 477 (1975); Banko v. Malanecki, 499 Pa. 92, 98, 451 A.2d 1008 (1982). Other cases speak of a gift to the "marital estate" or "marital entity", see Clapper v. Clapper, 41 Somerset L. J. 215, 225, 25 D.&C.3d 467 (1982). Obviously, these terms are not the same as the common law concept of the marital entity or unit as described in DiFlorido, 649 at note 9 quoted ante page 363.

4. Prior to Butler, the presumption of gift applied only to the husband's contributions, not to the wife's. See: Butler, 464 Pa. at 527; Larimer Estate, 29 Somerset L. J. 61, 74 (Appendix Part B 2) (1974); Compare Blough v. Blough, 44 Somerset L. J. 14 (1985).

required as between spouses, even of a deposit account in the name of the husband, where intended joint ownership is clear. Hengst v. Hengst, 491 Pa. 120, 420 A.2d 370 (1980); see also Coyle v. Coyle, 282 Pa. Super. 221, 422 A.2d 1085 (1980).[5]

(6) Where there is a conveyance of property to both spouses by deed or contract, without more, the conveyance creates an estate by the entireties. DiFlorido, supra, at note 7; compare Hengst v. Hengst, supra, at headnote 1; Yohe v. Yohe, 466 Pa. 405, 353 A.2d 417 (1976).

Although the authorities attribute presumptive ownership to the husband of such personal property as is in either his possession or the possession of both spouses, other than the personal effects and paraphernalia of a wife in her possession which are presumptively hers, and household goods and furnishings possessed and used by both spouses which are presumptively entireties property under DiFlorido, that "one-sided" common law presumption of the husband's ownership cannot any longer be considered valid under the Equal Rights Amendment (as suggested in DiFlorido note 13), and we so hold. The problem is, what rule shall take its place? Shall the parties be relegated to proof of their intention of ownership by the totality of circumstances (including its funding and history of use, possession, purpose, documents, declarations, etc.) item by item? Or shall a presumption of equal joint ownership be extended to property other than house-

---

5. The rules governing property rights between spouses cannot ordinarily be applied to unmarried cohabitants. See: Banko v. Malanecki, 499 Pa. 92, 451 A.2d 1008 (1982); Beroes v. Haberman, 40 Somerset L. J. 265 (1982) and Beroes v. Haberman (No. 2),.43 Somerset L. J. 356, 33 D. & C. 3d 442 (1983).

hold goods and furnishings? If so, shall such presumption be restricted to property jointly used and possessed, or extended to personalty possessed and used separately by a spouse? A presumption is by far the most efficient rule, a goal stressed in DiFlorido (650) where the court said ". . . we cannot accept an approach that would base ownership on funding alone, since to do so would necessitate an itemized accounting whenever a dispute over household goods arose. . ." Although the totality-of-circumstances criterion goes beyond funding but includes it, and therefore necessitates such an itemized accounting whenever a dispute arises, that criterion should be avoided in the interest of judicial economy, in favor of some presumptive rule. The reasoning of DiFlorido stressed joint possession and use of household goods as the controlling consideration undergirding the presumption of joint ownership. We cannot yet determine which way the appellate courts will go; so far, they have been able to avoid the problem by looking at a totality of circumstances. See, for example: Hengst v. Hengst, supra; Coyle v. Coyle, supra; Simon v. Simon, 286 Pa. Super. 403, 429 A.2d 1 (1981). But our view is that if there is a presumption which in most cases expresses the likely intentions of modern marital partners toward the property acquired for and during marriage, such presumption rather than a totality of circumstances approach should be adopted, leaving to the spouse claiming otherwise to prove otherwise by the totality of circumstances.

The DiFlorido court was dealing with the narrow issue of household goods and furnishings within the home of cohabiting spouses, obviously in their joint use and possession, the easiest sort of context from which to derive a presumption of joint ownership as the most realistic alternative. But there are some

kinds of marital chattels, whose use and possession are more fluid within a marriage and not so easily established; and there are some which one spouse or the other may use exclusively such as tools, hobby and recreational items, and children's items.

We think the problem should be approached in light of the current societal consensus that marriage is today a family concept, a partnership, of equally autonomous members, whose joint and equal character ordinarily extends to all non-business tangible personal property acquired in anticipation of or during marital cohabitation, which is in the possession of any member of the family unit, unless shown to be the separate property of a spouse. This statement excludes from its embrace: real property, intangible personalty, and business assets, not necessarily because the presumption should not apply to them but because they are not in issue in the instant, case; the trucking business is awarded by the trustee to the exceptant husband without objection, the intangibles (bank accounts and chose in litigation) are awarded jointly in accordance with the stipulation of the parties, and the parties agree that the real estate is jointly owned.[6]

---

6. A deposit account (intangible) of the husband's earnings was awarded to the parties jointly in Hengst v. Hengst, supra, where the husband admitted a gift thereof to both. In George v. Madden, 1 D.&C.3d 71 (1976), the court extended DiFlorido to real property conveyed to the parties in joint names prior to marriage in anticipation of marriage, where the parties were later married and divorced. In Simon v. Simon, supra, a vehicle titled in the husband was found to be jointly owned on the basis of joint use and intention; see also: Commonwealth v. Rounds, 38 Somerset L. J. 16, 19 (1979) and Lyons v. Kalp, 38 Somerset L. J. 1, 6 (1979). In Sperry v. Sperry (No. 2), 32 Somerset L. J. 148 (1976), decided prior to DiFlorido, the court awarded the business to the husband on

The idea of a collective marital partnership enterprise is recognized judicially as the prevailing societal consensus. As stated in Hopkins v. Blanco, 457 Pa. 90, 93, 320 A.2d 139, 140 (1974):

"Today a husband and wife are equal partners in a marital relationship, and, as such, should be equally treated with respect to that relationship."

Accord, George v. George, 487 Pa. 133, 136, 409 A.2d 1 (1979). This attitude is being reflected legislatively too in spousal controversies over marital property, causing entireties ownership of marital property to be favored. The present Divorce Code of 1980, 23 P.S. §401(f), providing for equitable distribution of marital property is to some degree a legislative recognition of the marital partnership, and extending that concept to their property, notwithstanding that the code mandates equitable rather than equal division as our partition statute requires. Compare Cauffiel v. Cauffiel, 41 Somerset L. J. 191, 195, 25 D.&C.3d 137, 142-3 (1981). Paraphrasing

---

the basis of the totality of circumstances without use of any presumption.

Personal effects are articles of personal property intimately associated with the person. See: Donaldson Estate, 362 Pa. 357, 67 A.2d 88 (1949); Beisgen Estate, 387 Pa. 425, 128 A.2d 52 (1956); Weidman Estate, 39 D.&C.2d 466 (1965); 28 CJS, Effects at page 837 ("Personal Effects"). The phrase refers to articles of personalty ". . .specially fitted for, and adapted to. . . [one's] personal and separate use." See 41 CJS, Husband and Wife §273b page 756. Such personal effects are limited here to items such as clothing, jewelry, cosmetics and the like which are worn on the person.

Compare Koba v. Koba, no. 118 Divorce 1978, now on appeal to the Superior Court, a post-divorce partition action in which the wife claims a share in the husband's bank account created with his earnings only, on the theory that she enabled him to accumulate it by spending her earnings on the family. For the preliminary opinion in Koba, see ante.

Mims J. in Iannetta v. Iannetta, 24 D.&C.3d 200, 204 (1981): "Moreover, the tenor of the times and the social relationships among people have changed dramatically . . .", and therefore equitable division of marital property deals with ". . . the economic fruits of the shared enterprise of marriage . . ." Compare Clapper v. Clapper, supra, 41 Somerset L. J. at 226, and Willkow v. Willkow, 41 Somerset L. J. 227, 232, 26 D.&C.3d 74, 78 (1982); Commonwealth ex rel. Farrell v. Farrell (No. 2), 42 Somerset L. J. 297, 311-312 (1983).

DiFlorido's concept of spousal contributions to property acquired in anticipation of or during marriage as including not merely contributions of money but also of services, logically must extend to any property acquired for the family enterprise, not merely household goods. Surely the non-monetary contribution of a spouse is not to be limited to household services which may be directly related to taking care of the household goods and furnishings. Spouses, whether gainfully employed or not, make many contributions of services, physical and psychological, to the well-being of the other spouse and to the family lifestyle which enable the other spouse to function in making his or her contribution. Thus, just as (for example) a wife's application of her earnings to some family acquisitions will free the husband's earnings for other acquisitions, making it reasonable to presume that the acquisitions of each are jointly owned (compare Hengst, supra), a wife's non-monetary contribution of services as female partner to the other spouse and to the joint family enterprise enables the husband to function as male partner in making his contribution thereto, financial and otherwise. So viewed, the respective contributions of each spouse to the marriage are like the white and yolk in scrambled eggs, virtually insepa-

rable. It seems strikingly medieval and simplistic to base ownership of any property acquired for that enterprise on financial funding at all by downgrading the other types of contribution mentioned; and that is the logic if not the holding of DiFlorido. Indeed, there is some language in DiFlorido which virtually invites or perhaps foreshadows our holding here, in referring generically to ". . . property intimately associated with marriage" (Id. 650), and by stressing as an important element in property ownership that ". . . it is likely that both spouses have contributed in some way to the acquisition and/or upkeep of, and that both spouses intend to benefit by the use of . . ." the property. Since the contribution may be indirect, so may the benefit, and it is sufficient that the acquisition or use benefit the marriage as a whole even though, for example, the property may consist of recreational equipment ordinarily used by one spouse, because the other has contributed in some way to its acquisition and to the creation of family conditions which enable and further the recreational activity. Although DiFlorido stressed applicability of the presumption of joint ownership to property which "has been possessed and used by both spouses" (651), and apparently contemplated property like household goods whose use is joint, we think the other important considerations above outlined warrant extending that notion to any family tangible personalty possessed and used by either or both spouses in any nonbusiness activity.[7]

--------

7. Thus, the presumption here applied is not merely a procedural expedient, although expediency is a factor as previously noted; it is soundly based on the strong probability of fact that it accords with the intentions of most cohabiting spouses in our society. See Commonwealth v. Thompson, 27 Somerset L.J. 241 (1971), affirmed per curiam 221 Pa. Super. 824 (1972), discussing presumptions. Being rebuttable, the

## CONCLUSION

For the reasons set forth above, we conclude that any tangible nonbusiness personal property acquired in anticipation of or during the marriage of cohabiting spouses, is rebuttably presumed to be entireties property.

## ORDER

Now, August 2, 1984, defendant's exceptions to the trustee's first report are overruled; accordingly, we have this date signed the trustee's proposed decree attached to said report.

---

presumption is not a mere legal fiat applicable regardless of fact or desires. Willcox v. Penn Mutual Life Insurance Co., 357 Pa. 581, 55 A.2d 521 (1947), in which the community property law was declared unconstitutional, as discussed in Bacchetta v. Bacchetta, 498 Pa. 227, 445 A.2d 1194 (1982), declaring equitable property division in divorce constitutional. On methods of evaluating the services of a homemaker in divorce proceedings, see Hnida v. Hnida, 20 Mercer 252 (1984).