J-A14025-20

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| | |
|---|---|
| IN RE: BERNARD L. KLIONSKY | : IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : |
| APPEAL OF: MATTHEW KLIONSKY, NINA KLIONSKY, AND RUTH KLIONSKY SHAPIRO | : : : : |
| | : |
| | : No. 1508 WDA 2019 |

Appeal from the Order Entered September 4, 2019
In the Court of Common Pleas of Allegheny County Orphans' Court at
No(s): No. 2266 of 2018

BEFORE: SHOGAN, J., McLAUGHLIN, J., and MUSMANNO, J.

MEMORANDUM BY McLAUGHLIN, J.: FILED SEPTEMBER 29, 2020

Matthew Klionsky, Nina Klionsky, and Ruth Klionsky Shapiro (collectively, "Appellants") appeal the order dismissing the Objections and Amended Objections to the Account of Daniel Klionsky as power of attorney for their father, Dr. Bernard Klionsky. Appellants, beneficiaries of Bernard's Estate, seek the return to the Estate of monetary gifts Bernard made to Daniel and his family. We conclude that the trial court applied an incorrect standard when determining the validity of inter vivos gifts, vacate the order, and remand.

Bernard and his wife had four children: Matthew, Nina, Ruth (i.e., Appellants), and Daniel. Bernard gave Daniel power of attorney in 2012. During his final years of life, Bernard gave Daniel and his immediate family $256,000. Bernard died in 2017, at the age of 92. His wife having predeceased

him, Bernard's will provided that his four children were the beneficiaries, in equal amounts, of his residuary Estate. Daniel is the executor of the Estate.

Appellants commenced this action by filing a Petition to require Daniel to file an account of his activity as power of attorney for Bernard. Appellants alleged Daniel had "enriched himself through undue influence," and that he had taken "advantage of his father's weakened intellect, abused his positions of trust and confidence with [Bernard], and improperly converted and/or diverted assets to [himself] and his immediate family's benefit." Pet., 4/5/18, at ¶¶ 12, 15. Daniel filed an Answer, denying that he had taken advantage of Bernard, and asserting that Bernard had voluntarily given him and his family the gifts after independent consultation with counsel. Daniel also filed an Account as Power of Attorney and a Petition for Adjudication. Appellants filed Objections and Amended Objections to Daniel's Account. Appellants also filed an Amended Petition, asking the trial court to "invalidate the inter vivos gifts to Daniel and his immediate family that were procured by undue influence and/or deception and have the [p]roperty returned to Dr. Klionsky's estate." Am. Pet., 10/29/18, at 3. Daniel filed an Answer to the Amended Petition.

The court held a bench trial on June 26 and 27, 2019, after which it made the following findings of fact:

> Dr. and Mrs. Klionsky were the parents of four (4) biological children: Daniel, Matthew, Ruth, and Nina. At all relevant times, Matthew resided in Chicago, IL[,] Ruth resided in Kansas City, MO, and Nina resided in Rochester, NY.

Daniel, who is a Financial Advisor with Morgan Stanley, lived approximately a quarter mile from his parents' residence. He was his Father's financial advisor.

Daniel and Matthew were the Agents on Powers of Attorney for both of their parents.[1]

> [1] Dr. Klionsky revoked Matthew's Power of Attorney on April 19, 2016.

Prior to their deaths . . ., Daniel, his wife (Janee), and their four daughters provided almost daily care for his parents, both physically and emotionally.

Daniel undertook a limited number of transactions using the [power of attorney]. Rather, when he paid bills for his Father, he used a checking account at First National Bank that was jointly owned by Daniel and Dr. Klionsky.

Dr. and Mrs. Klionsky consulted with their then-counsel, Robert Wolf about compensating Daniel. Attorney Wolf sent a letter to Matthew, Ruth, and Nina dated March 11, 2015, in which he discussed providing compensation to Daniel and his family for their extensive efforts in caring for Dr. and Mrs. Klionsky. Matthew, Ruth, and Nina sent an email to Daniel on April 14, 2015, in which they acknowledged that Daniel and his family were expending significant time caring for their parents. In an email to his siblings dated April 30, 2015, Daniel suggested how he could be compensated for the duties that he performed for their parents.

Rebecca Spiegel, the Klionskys['] accountant, attended two meetings at the Klionsky residence. The meetings, which were held on July 6, 2015[,] and July 29, 2015, were convened at the suggestion of Attorney Wolf, who was present, along with Dr. and Mrs. Klionsky. During these discussions in 2015, Dr. Klionsky was "very engaged" in the discussions and Ms. Spiegel did not have any concerns about his competency. At the second meeting, Dr. and Mrs. Klionsky decided the amount of the gifts to be made to Daniel and his Wife. Via checks written by Dr. Klionsky, Daniel and his Wife received gifts in the amount of $56,000 from Dr. and Mrs. Klionsky in 2015 and the same amount in 2016. Via checks written by Dr. Klionsky, Daniel and his Wife received total gifts of $28,000 from Dr. and Mrs. Klionsky in 2017. Via checks written by Dr. Klionsky, Daniel's four daughters received total gifts of $116,000 from Dr. and Mrs. Klionsky in 2015 through 2017. The other

grandchildren did not receive any gifts during this time period from their grandparents.

Mem. Op. and Order of Ct., 9/5/19, at 1-3 (paragraph numbering and citations to notes of testimony and exhibits omitted); see also Trial Ct. Op., 11/5/19, at 1-3.[1]

The court dismissed Appellants' claims. The court recited the applicable rule as providing that there is "a presumption of undue influence when the evidence demonstrates: (1) that a person or persons in a confidential relationship with a testator or grantor has (2) received a substantial portion of the grantor's property, and (3) that the grantor suffers from a weakened intellect." Owens v. Mazzei, 847 A.2d 700, 706 (Pa.Super. 2004); see Mem. Op. at 3-4; Tr. Ct. Op. at 3.

The court concluded that Appellants had met the first prong of the test, but not the other two. Regarding the first prong, the court found "that Daniel and Dr. Klionsky had a confidential relationship because Daniel was his financial advisor." Mem. Op. at 4. Under the second prong, the court determined the money given to Daniel was not an "offensive" amount when considered as compensation "for day-to-day care for elderly parents." Mem. Op. at 4. The court noted that Daniel's siblings had not contributed to their parents' care, and had "acknowledged that Daniel and his family were entitled

_____

[1] Appellants failed to include the transcript of trial in the certified record. We therefore deem it non-existent for the purposes of our review. See Parr v. Ford Motor Co., 109 A.3d 682, 695, 695 n.10 (Pa.Super. 2014) (en banc). However, our decision to remand does not necessitate our review of the transcript.

to compensation." Id. Regarding the third prong, "the Court was unable to find that Dr. Klionsky suffered from a weakened intellect." Tr. Ct. Op. at 3. The court stated, "While Dr. Klionsky may have been failing intellectually in the years and months before his death, there was no definitive testimony to prove that he was incompetent." Mem. Op. and Order of Ct. at 4; Tr. Ct. Op. at 3.

Appellants appealed. They ask this Court to decide whether "the trial court err[ed] in finding in favor of Daniel Klionsky after incorrectly placing the burden of proof on Appellants to prove undue influence[.]" Appellants' Br. at 4. Appellants argue the court committed legal error in concluding that they were not entitled to relief because they did not prove Bernard suffered from weakened intellect. Appellants assert that a challenge to an inter vivos gift does not require evidence of a weakened intellect, and because they established a confidential relationship between Daniel and Bernard, the burden shifted to Daniel to prove the gifts were "free, voluntary, understood, and beyond the reach of suspicion." Id. at 7.[2]

_____

[2] Bernard's Estate, which intervened during the proceedings before the trial court, argues we should affirm because the trial court previously ruled in another action – an action to remove Daniel as executor of the Estate – that the gifts were compensation, and thus Appellants' instant claims are barred by res judicata and/or collateral estoppel. The Estate raised this argument in its post-trial submission to the trial court, but did not attach any documents from the other action to its filing, and the trial court did not address the argument during the proceedings below or in its opinion. The Estate also argues that the court should have denied the claims because Appellants raised them in objection to Daniel's Account as power of attorney, and the court

- 5 -

We review the Orphans' Court's factual findings for abuse of discretion, and its legal conclusions for error of law. Owens, 847 A.2d at 706. "Because the Orphans' Court sits as the fact-finder, it determines the credibility of the witnesses and, on review, we will not reverse its credibility determinations absent an abuse of discretion." Id. (quoting In re Estate of Harrison, 745 A.2d 676, 678 (Pa.Super. 2000)) (brackets omitted). "If the court's findings are properly supported, we may reverse its decision only if the rules of law on which it relied are palpably wrong or clearly inapplicable." Id. (quoting Harrison, 745 A.2d at 678-79).

The standard the Orphans' Court cited applies to claims that a testamentary transfer is invalid because the defendant exerted undue influence upon a testator. That standard employs a burden-shifting rule. It requires the contestant to the will to first present a prima facie case that (1) the testator and defendant were in a confidential relationship; (2) the testator was of weakened intellect; and (3) the testator bequeathed the defendant a substantial portion of his or her estate. In re Clark's Estate, 334 A.2d 628, 632 (Pa. 1975) ("Clark's I"); In re Estate of Glover, 669 A.2d 1011, 1015 (Pa.Super. 1996).[3] Once the contestant has presented a prima facie case of

_____

never obtained jurisdiction over Daniel in his individual capacity, or over the other donees. The trial court did not address this argument, either. Because we remand for further consideration by the trial court, we decline to address these arguments at this time.

[3] We employed this standard in Owens upon a challenge to a beneficiary designation on a bank account. See Owens, 847 A.2d at 703, 706.

these elements, the burden shifts to the defendant to prove, by clear and convincing evidence, that the will provision was not the product of undue influence. Clark's I, 334 A.2d at 632; Glover, 669 A.2d at 1015.

However, a challenge to a gift made during the decedent's lifetime, such as the gift at issue in the case before us, is subject to a different standard. The challenger need only assert that the donor and donee were in a confidential relationship before the burden shifts to the donee to "prove affirmatively that it is unaffected by any taint of undue influence, imposition, or deception." McCown v. Fraser, 192 A. 674, 676 (Pa. 1937); accord Banko v. Malanecki, 451 A.2d 1008, 1010 (Pa. 1982); Hera v. McCormick, 625 A.2d 682, 690 (Pa.Super. 1993); see also Matter of Estate of Evasew, 584 A.2d 910, 912-13 (Pa. 1990); In re Clark's Estate, 359 A.2d 777, 780 (Pa. 1976) ("Clark's II") (stating burden shifts to donee to "affirmatively show that the gift was the free, voluntary and intelligent act of" the donor);

In such a case, the challenger bears no burden of showing that the donor had a weakened intellect. Rather, an inter vivos gift to one in a confidential relationship with the donee "will be condemned, even in the absence of evidence of actual fraud, or of mental incapacity on the part of the donor, unless there is full and satisfactory proof that it was the free and intelligent act of the donor, fully explained to him, and done with a knowledge of its consequences." McCown, 192 A. at 676-77 (emphasis added); see also Fiumara v. Fiumara, 427 A.2d 667, 671 n.6 (Pa.Super. 1981); Burns v. Kabboul, 595 A.2d 1153, 1162-64, 1171 (Pa.Super. 1991) (deciding both

- 7 -

types of claims under different standards). The reason that a party contesting a will must prove the testator suffered from weakened intellect in order to assert undue influence claim is that "a testator's interest in his property necessarily terminates at death," and therefore "the law does not view a testamentary disposition with so suspicious an eye." McCown, 192 A. at 677. In contrast, one challenging an inter vivos gift need not establish weakened intellect because "it is opposed to the common experience of mankind for one yet alive and able to enjoy his property to divest himself of a substantial part of his estate voluntarily and without consideration." Id.

Here, the trial court found a confidential relationship existed because Daniel served as Bernard's financial advisor.[4] After so finding, the court should have shifted the burden to Daniel to prove that Bernard gave him and his family the money intelligently and by his own free will. See Banko, 451 A.2d at 1010. The court did not do so, and thus it erred. Because the court applied

_____

[4] A confidential relationship exists when "the circumstances make it certain the parties do not deal on equal terms, but, on the one side there is an overmastering influence, or, on the other, weakness, dependence or trust, justifiably reposed." In re Estate of Fritts, 906 A.2d 601, 608 (Pa.Super. 2006) (quoting Owens, 847 A.2d at 709); see also Wisniski v. Brown & Brown Ins. Co. of PA, 906 A.2d 571, 577 (Pa.Super. 2006) ("A confidential relationship is marked by such a disparity in position that the inferior party places complete trust in the superior party's advice and seeks no other counsel, so as to give rise to a potential abuse of power" (citation omitted)). Relationships involving power of attorney, advisor/counselor, and parent/child are indicative, but not dispositive, of the existence of a confidential relationship, which is a question of fact. See McCown, 192 A. at 676; In re Estate of Smaling, 80 A.3d 485, 498-99 (Pa.Super. 2013); Fritts, 906 A.2d at 608. We see no reason to upset the trial court's finding on this point.

an incorrect standard, we remand to the trial court, so that it can determine, in the first instance, whether Bernard gave the money to Daniel and his family intelligently and of his own free will.

Order vacated. Case remanded with instructions. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/29/2020