535 A.2d 146

**Cynthia D. DeLOATCH, Administratrix of the Estate of Ethelcora DeLoatch, Appellant,**

v.

**Arnold MURPHY.**

Superior Court of Pennsylvania.

Submitted Jan. 5, 1987.

Filed Dec. 28, 1987.

256

Barbara J. Moleah, Philadelphia, for appellant.

Joseph T. Simon, Philadelphia, for appellee.

Before WIEAND, TAMILIA and HESTER, JJ.

HESTER, Judge:

This action in equity to compel partition of real estate located at 1821 Georges Lane, Philadelphia, was instituted by Ethelcora DeLoatch against Arnold Murphy, appellee, on March 25, 1982. The trial court entered an order which granted partition and, on June 28, 1983, appointed a master to effect it. The master conducted a hearing and filed a report in which he recommended that appellee pay Ethelcora owelty [1] of twenty-five dollars, plus interest, and that title to the real estate be awarded to appellee upon payment of the owelty. The award was based on the master's

---

1. Owelty of partition is defined as follows:

    A sum of money paid by one of two coparceners or co-tenants to the other, when a partition has been effected between them, but, the land not being susceptible of division into exactly equal shares, such payment is required to make the portions respectively assigned to them of equal value.

finding that Ethelcora's sole contribution to the purchase and maintenance of the property had been a twenty-five dollar deposit which she had made when the property was purchased. After Ethelcora filed exceptions, the trial court entered a final decree which adopted the recommendations of the master, and Ethelcora appealed. Ethelcora died on September 1, 1986, and the administratrix of her estate has been substituted as appellant. For brevity, we will refer to appellant's decedent as appellant. We reverse and remand for proceedings consistent with this opinion.

Appellant, who was at the time legally married to Raymond DeLoatch, began an amorous relationship with appellee in 1967 or 1968. They had one child born in 1968. On December 9, 1969, the subject property was purchased. The grantees on the deed were Arnold Murphy and Ethelcora A., "his wife." Appellee concedes that appellant is the person named in the deed. N.T., 10/26/83, at 8. Immediately following the granting clause, where the nature of the estate conveyed is customarily indicated, the deed provides that the property is granted to the grantees as "tenants by entireties."

The parties lived together at Georges Lane with their child and appellant's three daughters by DeLoatch until July, 1970, when appellant left. She returned in 1971, lived there for one year and left again, permanently. With the exception of the twenty-five dollar deposit money paid by appellant, appellee paid for all expenses associated with the property, including the downpayment, closing costs, mortgage, taxes, repairs, improvements, and maintenance costs.

Appellant claims an interest in the property pursuant to the language of grant in the deed. We agree with her claim, holding that the parties held title to the property as joint tenants with right of survivorship. We also hold that the tenancy had been severed prior to appellant's death, thus creating a tenancy in common and that the case must be remanded for a correct determination of the estate's interest in the property.

Black's Law Dictionary 996 (5th ed. 1979).

We must first determine the nature of the interest created in the deed dated December 9, 1969. *Maxwell v. Saylor*, 359 Pa. 94, 58 A.2d 355 (1948), is the first in a long line of cases dispositive of this issue. Maxwell, while legally married to someone else, took title to real property with his paramour, described in the deed as his wife. The grant was to them "as tenants by the entireties." The Pennsylvania Supreme Court acknowledged that, notwithstanding the language of the deed, the grantees could not take title as tenants by the entireties as that type of estate is limited to grantees who are legally married. The court determined, however, that the deed would be construed as creating an appropriate form of tenancy, determined by the intent of the parties as that intent appeared in the instrument. As their *"declared* intention was to own the property as tenants by the entireties," the court ruled that "[t]his was equivalent to stating in so many words that they desired to establish a right of survivorship." *Id.*, 359 Pa. at 96, 58 A.2d at 356 (emphasis in original). Accordingly, the court held that the deed created a joint tenancy with right of survivorship, awarded the property to the paramour, as surviving tenant, and declined to find that Maxwell's widow was entitled to fifty percent of the property as heir under a tenancy in common.

The principle announced in *Maxwell* has been consistently followed. In *Teacher v. Kijurina*, 365 Pa. 480, 76 A.2d 197 (1950), Sarah Jaic, who was legally married to someone else, and Nick Kijurina acquired title to various properties as grantees under deeds describing them as husband and wife. No other language appeared in the deeds indicating the character of the estate taken by the grantees. Sarah died, devising her property by will to relatives. The court distinguished *Maxwell v. Saylor, supra,* and, as no language intending to create a survivorship interest appeared in the deeds, ruled that the deed operated to convey an estate of tenancy in common. It reversed the trial court's conclusion that a joint tenancy with right of survivorship was created, a conclusion based partly on the fact that Kijurina had paid the entire purchase price for the property. The court stated

that the trial court erred by considering testimony regarding payment of purchase price:

> The language of the deed is clear and unambiguous and the intent of the grantees must be gleaned solely from its language.... In absence of fraud, accident or mistake parol evidence is inadmissible to vary or limit the scope of a deed's express covenants and the nature and quantity of the interest conveyed must be ascertained by the instrument itself and cannot be orally shown. Henry's Trial Evidence (3rd Ed.) Sec. 375 and cases there cited. Furthermore, in construing a deed, as in the case of a will, it is not what the parties may have intended by the language used but what is the meaning of the words.

*Teacher v. Kijurina, supra,* 365 Pa. at 486, 76 A.2d at 200.

In *Bove v. Bove,* 394 Pa. 627, 149 A.2d 67 (1959), the principles announced in *Maxwell* and *Teacher* were reaffirmed. Mabel Bove, while married to someone else, took title with Michael Bove to real estate under deeds describing her as Bove's wife and granting the property to them as tenants by the entireties. The court awarded her the property as surviving tenant under a joint tenancy with right of survivorship as against the executor of Bove's estate. The court ruled the fact that Mabel did not contribute at all to the property as "wholly irrelevant to the legal question involved." *Id.,* 394 Pa. at 629, 149 A.2d at 68; *accord Estate of Whiteman v. Whiteman,* 466 Pa. 343, 353 A.2d 386 (1976); *Righter v. Righter,* 442 Pa. 428, 429, 275 A.2d 4, 4 (1971) ("where a deceased spouse takes title to property with another, not his legal spouse, as tenants by the entireties, a joint tenancy with right of survivorship will be created rather than a tenancy in common"); *Thomas v. Thomas,* 442 Pa. 623, 275 A.2d 5 (1971); *First Federal Savings & Loan Ass'n v. Porter,* 408 Pa. 236, 183 A.2d 318 (1962); *see also Pennsylvania Bank and Trust Co. v. Thompson,* 432 Pa. 262, 247 A.2d 771 (1968) (grant to brothers as tenants by entireties created joint tenancy with right of survivorship).

In this case, the grant was to appellant and appellee as tenants by the entireties, which created a joint

tenancy with right of survivorship. The master found that appellant's interest in the land was twenty-five dollars, which represented the hand money she put on the property, plus interest. He characterized appellee as "majority tenant," and awarded him title to the property upon payment of the money to appellant. This award, adopted by the trial court, was clearly based on the master's finding that appellee had contributed, other than the twenty-five dollars, all of the money toward purchase and upkeep of the property. The contributions of the parties, however, was not a relevant consideration in determining the interests created by the deed.

Thus, in the absence of fraud, mistake or accident, the court should have found that the wording of the deed, when coupled with the judgment in partition, operated to convey a one-half interest to appellant in the land and partitioned the property accordingly. See *Banko v. Malanecki*, 499 Pa. 92, 451 A.2d 1008 (1982); *Larendon Estate*, 439 Pa. 535, 266 A.2d 763 (1970); *Vargas v. Brinton*, 305 Pa.Super. 357, 451 A.2d 687 (1982).

Appellee attempts to avoid this precedent by making two separate allegations of fraud. First, appellee claims that appellant concealed her marriage to DeLoatch prior to the conveyance in December, 1969. His testimony on this issue, however, was implausible and contradictory. Appellant lived next door to her parents when she met appellee. N.T., 10/26/83, at 61. Appellee admitted on cross-examination that he knew that the parents' surname was different from appellant's surname. *Id.* Her three daughters, who appellee purportedly thought were her sisters, lived with appellant and had her surname. *Id.* The three girls also moved into Georges Lane with the parties, instead of staying with appellant's parents. Further, appellee contradicted himself as to when he discovered that appellant was married, at one point stating that it was prior to the purchase of the Georges Lane house. *Id.* at 64–65. Appellant testified that appellee was aware of her marital status when the house was purchased. *Id.* at 66.

■   Appellee also accused appellant of fraudulently placing her name on the deed, contending that they had an agreement that the property was to be transferred to appellee and their child.   He testified that he never read the deed at the closing and did not realize appellant's name was on it.   In *Yohe v. Yohe*, 466 Pa. 405, 353 A.2d 417 (1976), the Pennsylvania Supreme Court ruled that a husband, who requested relief on the basis of fraud, could not avoid a deed he signed conveying his property to his wife.   The husband alleged that he thought he was signing a deed to himself, not his wife, and he thought a new deed was required due to recent satisfaction of the mortgage.   He claimed that his wife had had the deed drafted, she told him he was the grantee, and he signed the deed without reading it.   The court refused to grant relief to the husband, stating:

"If a party, who can read, will not read a deed put before him for execution he is guilty of supine negligence, which is not the subject of protection, either in equity or at law." *O'Reilly v. Reading Trust Co.*, 262 Pa. 337, 343–344 105 A. 542, 544 (1918). . . .   The integrity of signed documents must be respected especially in land transactions in order for there to be certainty in the law.   We cannot rescind conveyances merely because one party later claims that he did not understand what he was signing when there was nothing to prevent him from merely reading the deed to discover its contents.

*Id.*, 466 Pa. at 410, 353 A.2d at 420.

The reasoning of *Yohe* applies in this case.   Appellee can read and understand English.   N.T., 10/26/83, at 49.   His alleged failure to read the deed at the closing is not legally excusable.   We will respect the need for certainty regarding land conveyances rather than protect a party who negligently fails to review a document which defines his property rights at the property closing.   Further, appellee testified that appellant was not present at the closing, N.T., 10/26/83, at 49, and, thus, according to his version of the events, could not have prevented him from reading the deed

or misled him about its contents. Inasmuch as appellee failed to prove fraud, the deed must be interpreted as creating a joint tenancy between the parties.

■ Appellee next argues that, if we reverse the order awarding him the property upon the payment of owelty, we should hold that he is entitled to the property as surviving joint tenant, due to appellant's death.

However, this would be appropriate only if the joint tenancy had not been severed prior to appellant's death, an issue addressed by the Pennsylvania Supreme Court in *Sheridan v. Lucey*, 395 Pa. 306, 149 A.2d 444 (1959). There, the plaintiff died after the answer to her complaint was filed, but prior to the filing of a reply to new matter. The court stated:

> [W]e believe that the *mere pendency* of an action in partition, *without more*, is insufficient to work a severance of the joint tenancy, whereupon an abatement occurs upon the death of one of the joint tenants. This for the reason that, although a voluntary act on the part of one of the joint tenants is adequate to work a severance, that act must be of sufficient manifestation *that the actor is unable to retreat from his position of creating a severance of the joint tenancy.*

*Id.*, 395 Pa. at 309, 149 A.2d at 446 (emphasis added).

The court reasoned that the mere institution of the proceedings, before the issues are formulated, is an action too premature to sever the tenancy since the plaintiff still "has an election to continue the proceedings to judgment, *thus affecting a severance of the joint estate* or discontinuing the action and leaving the joint tenancy in status quo." *Id.; see also Clingerman v. Sadowski*, 513 Pa. 179, 188, 519 A.2d 378, 383 (1986) (unilateral action representing clear and unequivocal intention to sever a joint tenancy severs the tenancy); *Frohock v. Gustine*, 8 Watts 121 (1839) (death of plaintiff after judgment in partition is entered in action does not abate the writ); *Vargas v. Brinton, supra* (partition action taken to judgment is sufficient to sever a joint tenancy); *Yannopoulos v. Sophos*, 243 Pa.Super. 454, 365 A.2d 1312 (1976) (enforceable sales agreement severed

joint tenancy, as parties had placed themselves in a position from which they could not retreat); cf. *Allison v. Powell*, 333 Pa.Super. 48, 481 A.2d 1215 (1984), where the joint tenant died immediately after instituting a partition action, and we held that the joint tenancy had not been severed as the plaintiff could have retreated from his demand for partition since a judgment had not been entered.

In this case, the issues were formulated and a partition judgment entered. Appellant was no longer in a position to retreat from her demand for partition, and her actions evidenced a clear and unequivocal intention to sever the joint tenancy. Upon severance, which occurred upon entry of the partition judgment, the joint tenancy became a tenancy in common. *Yannopoulos v. Sophos, supra.* Appellee's contention that he is entitled to the property as surviving joint tenant must therefore fail.

In conclusion, the property must be partitioned between the parties without regard to their respective contributions towards its acquisition and in accordance with the decisions in *Banko v. Malanecki, supra; Larendon Estate, supra,* and *Vargas v. Brinton, supra.* Appellant's claim for rent, based on *Sciotto v. Sciotto,* 446 Pa. 414, 288 A.2d 822 (1972), must also be resolved.

Judgment reversed. Case remanded for proceedings consistent with this opinion. Jurisdiction relinquished.