J-A33018-16

2017 PA Super 203

ADAM L. KAPCSOS

    Appellee

    v.

MALISHA J. BENSHOFF

    Appellant

IN THE SUPERIOR COURT OF
PENNSYLVANIA

No. 227 WDA 2016

Appeal from the Judgment Entered March 8, 2016
In the Court of Common Pleas of Cambria County
Civil Division at No(s): 2014-4183

BEFORE:  LAZARUS, J., SOLANO, J., and STRASSBURGER, J.[*]

OPINION BY SOLANO, J.:       **FILED JUNE 29, 2017**

Appellant, Malisha J. Benshoff, appeals from the entry of judgment on March 8, 2016, in this action for partition of real property.  Although we agree that the parties own the premises jointly and that the premises may be partitioned, we hold that the trial court erred by misallocating the amount owed by Appellee, Adam Kapcsos, to Benshoff upon partition.  Thus, we vacate the judgment below and remand for further proceedings.

Benshoff and Kapcsos purchased the property in Sidman, Cambria County ("the Property") by a deed dated March 30, 2005, that was recorded on May 27, 2005.  Benshoff and Kapcsos never married, and the deed stated that it conveyed the Property to "MALISHA J. BENSHOFF, a single individual, and ADAM J. KAPCSOS, a single individual, of Johnstown, Pennsylvania, as joint tenants with the right of survivorship, Grantees."  The deed recited

---

[*] Retired Senior Judge assigned to the Superior Court.

further that the conveyance was "for and in consideration of the sum of NINETY THREE THOUSAND AND ($93,000.00) DOLLARS . . ., unto [Grantor] well and truly paid by the said Grantees." Kapcsos' Ex. A, at 1 (emphasis deleted).

Benshoff and Kapcsos separated in 2008. Kapcsos filed this action for partition of the Property on October 29, 2014, after which Benshoff filed an answer and counterclaim for partition.

The trial court held a bench trial on May 27, 2015, and made the following Findings of Fact and Conclusions of Law on July 7, 2015:

> 1. [Kapcsos] and [Benshoff] purchased real property [in] Sidman, Pennsylvania on May 27, 2005, as joint tenants with the right of survivorship. The [P]roperty consists of a lot with a single-family residence built on it.
>
> 2. The purchase price of the [P]roperty was $93,000 and Kapcsos made a deposit/earnest payment of $2,000 from his savings with an additional payment at the closing of $20,322.56 made from his savings. Benshoff did not contribute any funds towards these amounts.[1]
>
> 3. The balance was financed with a mortgage in the amount of $74,000 in both parties' names.
>
> 4. The parties were not married at the time of the purchase and never married thereafter.
>
> 5. In May 2008, Kapcsos moved out of the residence and Benshoff took up occupancy with the couple's minor child until March 2010 when she moved out.

---

[1] The deed made no mention of Kapcsos' down payment or of the source of any funds used to purchase the Property.

- 2 -

6.    In April 2010 Kapcsos took up residence on the [P]roperty where he has remained since.

7.    Upon retu[r]ning to the [P]roperty Kapcsos found a shed the parties had purchased was removed by Benshoff.

8.    Benshoff also removed all the personal property and all the furnishings, excepting the stove and refrigerator.

9.    Kapcsos found the [P]roperty in need of repairs and engaged in a period [of] remodeling that included new carpets, painting almost every room, upgrading the bathrooms, repaired the fireplace, replaced the hot water tank, and other projects.

10.    From May 2008 through March 2010[,] Benshoff paid all the expenses relative to the [P]roperty including the mortgage and utilities.

11.    From April 2010 to the present[,] Kapcsos has paid all the expenses related to the [P]roperty including the mortgage and utilities.

12.    As of April 20, 2010, the mortgage had an outstanding balance of $62,694.60 with a monthly payment of $528.

13.    As of April 6, 2015, the mortgage had an outstanding balance of $52,545.11 with a monthly payment of $563.

14.    From January 1, 2011 through the present[,] the [P]roperty had a monthly fair rental value of $800.

15.    The parties, as joint tenants with the right of survivorship, each have a one-half interest in the [P]roperty.

16.    The [P]roperty is not capable of division, without prejudice to or spoiling the whole, into purparts[2] proportionate in value to the interests of the co-tenants[.]

---

[2] A "purpart" is a "share of an estate formerly held in common" that is allotted after its division.  *See* BLACK'S LAW DICTIONARY (10th ed. 2014).  Rule 1560 of the Rules of Civil Procedure requires that partitioned property be divided into purparts proportional in value to the interests of each party "[i]f division can be made without prejudice to or spoiling the whole."  If the
*(Footnote Continued Next Page)*

17. The property can be most advantageously divided into a single purpart.

18. Kapcsos remains in the [P]roperty and desires to maintain possession of it. As such he will be awarded the single purport and Benshoff shall execute a deed to this effect upon payment of an owelty, to be calculated below, and refinancing of the mortgage to remove Benshoff's name from the debt.

19. The [P]roperty has a current appraised value of $102,000.

20. The current mortgage is $52,545.11 as of the last statement entered. . . .

21. The current equity in the [P]roperty is $102,000 - [$]52,545.11 = $49,454.89.

22. Each party is entitled to their one-half interest in the equity calculated as $49,454.89 / 2 = $24,727.45.

23. Benshoff is entitled to a credit for ½ the fair rental value of the property from January 1, 2011 through July 1, 2015. This being the only period for which a fair rental value has been established.

a. Her credit is calculated as $800/month X 54 months = $43,200 / 2 = $21,600.

24. Kapcsos is entitled to the following credits:

a. Hot water heater valued at $292.56 ($276 + $16.56 tax). Kapcsos is not entitled to any credit for other improvements as they were not necessary to preserve or safeguard property.

*(Footnote Continued)* ────────────

property cannot be divided, it is subject to sale, with the proceeds to be divided proportionally. If the amounts received by each party as a result of the partition or sale are not equal to the value of the parties' interests, the party receiving the more valuable portion must pay the other party an "owelty," that is, an amount that will equalize the parties' respective interests. *See* Pa.R.C.P. 1563; ***Bernstein v. Sherman***, 902 A.2d 1276, 1279 (Pa. Super. 2006).

- 4 -

b.　One-half the mortgage payments made from April 1, 2010 through July 1, 2015. . . . [A]s of April 1, 2010, the payment was $528 per month.　As of April 1, 2015 this amount increased to $563. . . .　Accordingly the mortgage credit is calculated as follows:

i.　April 1, 2010 through March 1, 2015:　59 months X $528 month = $33,404.

ii.　April 1, 2015 through July 1, 2015:　4 months X $563 = $2,252.

iii.　$33,404 + $2,252 = $33,404 / 2 = $16,701.

c.　Deposit/earnest payment of $2,000 plus cash paid at closing of $20,322.56 = $22,322.56.　These sums may not be used in determining the parties' interest in the property but under Pennsylvania Rule of Civil Procedure 1570(a)(5) the Court may award credit for payments made or liabilities incurred by a party. The Court finds that by making these payments out of personal funds Kapcsos made a payment that inured to the benefit of Benshoff and is entitled to credit for that payment.

25.　The owelty [to which] Benshoff is entitled is calculated as:

| | |
|---|---|
| $ 24,727.45 | representing her ½ share of the equity |
| + $ 21,600.00 | representing her ½ share of the rental value |
| = $ 46,327.45 | |
| | |
| - $　292.56 | value of hot water tank paid by Kapcsos |
| - $ 16,701.00 | representing ½ mortgage payments made by Kapcsos |
| - $ 22,322.56 | earnest money and cash at closing paid by Kapcsos |
| = $ 7,011.33 | owelty to Benshoff from Kapcsos |

26.　Upon payment of the owelty of $7,011.33 to Benshoff and proof that the mortgage has been refinanced to remove Benshoff as a debtor Kapcsos is awarded title to the real estate and Benshoff shall execute a deed in favor [of] Kapcsos at that time.

Findings of Fact & Conclusions of Law, 7/7/15, at 1-5 (citations omitted).

Thus, the trial court held that the Property could not be divided between Kapcsos and Benshoff, and so it allowed Kapcsos to take title to the entire premises after paying Benshoff an owelty equal to the value of her interest. After subtracting the outstanding mortgage balance, the Property was worth $49,454.89, and, as Kapcsos and Benshoff owned the property jointly, the court divided that value equally. It also divided equally the $43,200.00 fair rental value of the Property over the only period as to which that value was proven, January 1, 2011 through July 1, 2015 (a date just prior to the trial court's decision).[3] Benshoff's interest in half of the Property's value and half of the proven fair rental value meant that she was entitled to an owelty of $46,327.45.

This appeal arises, however, because the trial court then adjusted that owelty to account for three credits to which it determined Kapcsos was entitled. One, the $292.56 value of the hot water tank, is not at issue here, but the other two were more substantial. First, the court credited Kapcsos for half of the mortgage payments he made from April 1, 2010 to the date of the decision: $16,701.00. Second, it credited Kapcsos for the full amount of the down payment he made at closing: $22,322.56. When these credits were subtracted, the net owelty due to Benshoff from Kapcsos fell to only $7,011.33.

_____

[3] Kapcsos lived on the Property during that period.

On July 17, 2015, Benshoff filed exceptions to the trial court's decision. After a hearing, the trial court overruled the exceptions on January 11, 2016.[4] Benshoff filed a timely notice of appeal on February 10, 2016.[5] In it, Benshoff raises the following questions:

A. Whether down payment and acquisition costs are relevant, pursuant to Pa.R.C.P. 1570(a)(5), in determining a party's share of partitioned real property?

B. Whether a party's mortgage payments are relevant in determining his share of the partitioned real property, but if relevant, did the court err in not awarding [Benshoff] credit for her mortgage payments?

Benshoff's Brief at 4.

Our standard of review following a non-jury trial is as follows:

Upon appeal of a non-jury trial verdict, we consider the evidence in a light most favorable to the verdict winner and will reverse the trial court only if its findings of fact lack the support of competent evidence or its findings are premised on an error of law.

When this Court reviews the findings of the trial judge, the evidence is viewed in the light most favorable to the victorious party below and all evidence and proper inferences favorable to that party must be taken as true and all unfavorable inferences rejected. The court's findings are especially binding on appeal,

_____

[4] In the meantime, Benshoff filed a direct appeal with this Court at Dkt. No. 1213 WDA 2015, presumably out of a concern that the 30-day appeal period would expire prior to a ruling on the exceptions. We quashed that appeal on August 28, 2015.

[5] On March 3, 2016, this Court ordered Benshoff to provide proof that judgment had been entered. On March 8, 2016, the trial court entered judgment, and Benshoff provided that information to this Court on the following day. On March 22, 2016, we discharged our order to show cause and permitted the appeal to proceed.

where they are based upon the credibility of the witnesses, unless it appears that the court abused its discretion or that the court's findings lack evidentiary support or that the court capriciously disbelieved the evidence.

***Nicholas v. Hofmann***, 158 A.3d 675, 688 (Pa. Super. 2017) (citation and quoted citation omitted).

However, where the issue . . . concerns a question of law, our scope of review is plenary.

The trial court's conclusions of law on appeal originating from a non-jury trial are not binding on an appellate court because it is the appellate court's duty to determine if the trial court correctly applied the law to the facts of the case.

***Richards v. Ameriprise Fin., Inc.***, 152 A.3d 1027, 1034 (Pa. Super. 2016) (brackets and citation omitted). "The scope of review of a final [order] in equity is limited and will not be disturbed unless it is unsupported by the evidence or demonstrably capricious." ***Sack v. Feinman***, 413 A.2d 1059, 1066 (Pa. 1980); ***accord Nicholson v. Johnston***, 855 A.2d 97, 100 (Pa. Super. 2004), ***appeal denied***, 868 A.2d 453 (Pa. 2005).

### Down Payment and Acquisition Costs

The first issue raised by Benshoff is "whether downpayment and acquisition costs are relevant, pursuant to Pa.R.C.P. 1570(a)(5), in determining a party's share of partitioned real property." Benshoff's Brief at 8; ***see also id.*** at 4 ¶ A.[6] Benshoff claims that the trial court erred in

---

[6] Benshoff's Brief, at 11, states that she "would . . . argue that Kapcsos' claim for downpayment and closing costs from the May 2005 closing are barred by the six (6) year statute of limitations in May 2014 as recited in
*(Footnote Continued Next Page)*

- 8 -

allowing Kapcsos a credit for these items. The parties do not dispute that when they purchased the Property, Kapcsos made a down payment of $2,000.00 and an additional payment of $20,322.56 at closing, and that he funded both amounts from his personal savings, with no contribution by Benshoff. *See* Benshoff's Brief at 8; Kapcsos' Brief at 8; Findings of Fact & Conclusions of Law, 7/13/15, at 1, 4 ¶¶ 2, 24(c). The amounts total $22,322.56.

Benshoff contends that it was error to award Kapcsos a credit for these items because the Property should be "partitioned between the parties without regard to their respective contributions towards its acquisition, as the acquisition costs were not a conditional gift nor was there any expectation of credit or repayment." Benshoff's Brief at 7, 9-11. Kapcsos maintains that — as the trial court held — he should receive a credit for the full amount of the payments because Benshoff did not contribute toward them. Kapcsos' Brief at 9-10. After careful consideration, we conclude that our case law requires a holding in favor of Benshoff on this issue.

*(Footnote Continued)* ─────────────

**Bednar v. Bednar**, [688 A.2d 1200 (Pa. Super. 1997).]" If, in the instant case, recovery for acquisition costs were barred by a statute of limitations, then this entire issue would seemingly be resolved. However, Benshoff never raised a statute-of-limitations argument in the trial court regarding Kapcsos' purchase money payments, and any argument along those lines therefore is waived. We note that in **Bednar**, there was both a partition action and a counterclaim seeking a money judgment for expenses paid. **See id.** at 1202. This case does not involve a counterclaim for a money judgment, making application of **Bednar** to these facts less clear.

The trial court awarded the credit to Kapcsos under Rule 1570(a)(5) of the Rules of Civil Procedure, which authorizes a trial court to subtract from an owelty any credits that are due to the party paying the owelty. The rule states that the trial court's decision in the partition action —

shall include findings of fact as follows: . . .

(5) the credit which should be allowed or the charge which should be made, in favor of or against any party because of use and occupancy of the property, taxes, rents **or other amounts paid**, services rendered, liabilities incurred or benefits derived in connection therewith or therefrom . . . .

Pa.R.C.P. 1570(a)(5) (emphasis added). Although this rule does not explicitly list acquisition costs, closing costs, down payments, purchase moneys, or similar payments as bases for allowable credits, the trial court held that Kapcsos' payments fell within the rule's reference to "other amounts paid" and explained its reasoning as follows:

Benshoff argues that the phrase "other amounts paid" only applies to necessary amounts paid for repair and upkeep but cannot be read to include other payments.

There is nothing in the language of Rule 1570 that requires such a narrow reading of the phrase "other amounts paid" nor has Benshoff directed the Court's attention to any case requiring such a narrow interpretation. Statutory construction requires that words in statutes be given effect in accordance with their plain and common meaning. The language of the Rule permits a court broad discretion to award a credit or charge against any party for expenditures, services rendered, liabilities incurred or benefits derived in connection with the property.

Accordingly, a plain reading of Rule 1570(a)(5) allows a party in a partition action to be credited for financial contributions in acquiring the property as "other monies paid" in relation to the "use, occupancy," and enjoyment of the property. Benshoff would never have obtained, let alone used or occupied, the property,

albeit temporarily, but for Kapcsos' significant monetary contributions toward the property's purchase price. The payments represented an expenditure by Kapcsos from his personal funds and a benefit to Benshoff, by reducing the mortgage[.] Benshoff should not obtain a windfall for those payments in the partition action.

It would be an unjust result to not credit Kapcsos for these payments since he provided over $22,000 to the down payment and jointly and severally obligated himself to the mortgage, while freeing Benshoff from the burden of contributing to the down payment as such equity demands a credit for those payments be given to Kapcsos. Accordingly, there was no error in awarding Kapcsos credit for the mortgage payments or for the earnest money and the amount paid at closing.

Trial Ct. Op., 4/6/16, at 5-6 (citations omitted).[7]

There is a sparsity of case law in Pennsylvania discussing the application of acquisition costs to the calculation of an owelty when property is partitioned among multiple owners, and the little law that does exist is in conflict. The leading decision permitting a credit for such payments is **Weiskircher v. Connelly**, 93 A. 1068 (Pa. 1915), a case decided by the Supreme Court of Pennsylvania over a century ago, and more than 40 years before the Supreme Court adopted Rule 1570.[8]

---

[7] The trial court cited **In re Sivak's Estate**, 58 A.2d 456 (Pa. Super. 1948), as authority for reimbursing a co-tenant who made expenditures that inured to the value of all co-tenants, but **Sivak's** dealt with the cost of a water heater and fire insurance premiums and said nothing about acquisition costs. **See id**. at 459.

[8] Pennsylvania Rules of Civil Procedure 1551 to 1590, which govern partition actions, were promulgated in 1955. Prior to that time, partition in equity was governed by the Act of July 7, 1885, P.L. 257, *as amended*, March 26, 1919, P.L. 26 § 1. **Beall v. Hare**, 174 A.2d 847, 849 (Pa. 1961).

*Weiskircher* involved a purchase of property by Weiskircher and Connelly, as tenants in common, at a sheriff's sale for $12,800. Connelly put up $982 of the purchase price out of his own funds, and the parties borrowed the remainder. Later, Connelly paid off the loan, plus interest. As a result, the total amount paid by Connelly with respect to purchase of the property was $13,912, and Weiskircher never contributed any money to that sum. 93 A. at 1068. In a later action between Weiskircher and Connelly for partition, the chancellor concluded that the property should be sold and the proceeds divided equally, "subject to the equitable charges set forth in his conclusions" of law, the third of which stated:

> William O. Weiskircher is justly and equitably liable to Joseph A. Connelly in the sum of $6,956, being one-half of the aggregate sum of $13,912 paid by said Connelly on account of the purchase of the property, costs and interest, together with interest on said sum of $6,956 from July 5, 1904.

93 A. at 1069. When Weiskircher appealed, the Supreme Court affirmed by a *per curiam* order that stated: "We have not been persuaded that any fact found by the learned chancellor below should be disturbed. His legal conclusions properly followed his findings, and the decree of the court below, based upon both, is therefore affirmed." 93 A. at 1069. Thus, the Supreme Court upheld the chancellor's decision to award Connelly a credit based upon his payments — both the down payment and the loan payments — to buy the property.

We also permitted credit for a down payment in *Nicholson*, 855 A.2d at 98. There, a couple jointly bought a house in anticipation of their

marriage. The deed said they were joint tenants with a right of survivorship. *Id.*[9] One of them, Johnston, paid the full down payment and settlement costs of $43,652.05. *Id.* The expected marriage did not take place, and Nicholson sued to partition the property. *Id.* "[B]ased on the testimony presented," the trial court divided the property equally between the parties based on the property's remaining equity value at the time of the parties' separation — that is, the court calculated the property's current market value, subtracted the amount of the remaining mortgage debt, and then divided the remaining difference equally between the parties. *See id.* at 98, 98 nn.1-2, & 102. Before dividing that net amount, however, the trial court subtracted the $43,652.05 paid by Johnston for the full down payment and settlement costs; then, after dividing the remaining net amount between Nicholson and Johnston, the court added $43,652.05 to Johnston's share as a credit for his payment of the purchase monies. *See id.* at 98 n.2. In doing so, the trial court explained that Johnston had paid those amounts as a "conditional gift" in anticipation of the parties' marriage and, because the marriage did not occur, he was entitled to be "reimbursed." *Id.* at 99.

---

[9] The cases on this partition issue draw no distinctions between those in which property is held as tenants in common and those in which it is held as joint tenants with a right of survivorship, and we therefore do not distinguish among the cases on that basis here. In both situations, the co-owners hold undivided equal shares in the entire estate. *See In re Estate of Quick*, 905 A.2d 471, 474 (Pa. 2006).

On an appeal objecting to the trial court's decision to credit Johnston with the $43,652.05, this Court affirmed. We held that the trial court was exercising its "broad equitable powers to effectuate justice" by providing for recovery of a conditional gift, and that the court did not abuse its discretion in doing so. 855 A.2d at 100-02 (quoted citation omitted).

These decisions, meager though they are,[10] support the view that, as a general matter and in appropriate cases, a Pennsylvania trial court has authority to allow a credit for payments made toward a purchase price when calculating the owelty due in a partition action. We note that such a credit is similar to the allowance we have permitted for payments made to reduce a mortgage debt after the initial purchase of the property. For example, in *Fascione v. Fascione*, 416 A.2d 1023, 1028 (Pa. Super. 1979), we required a wife in a partition action to reimburse her husband for "the

---

[10] *See also Swails v. Haberer*, No. Civ. 02–7095, 2004 WL 1941245 (E.D. Pa., Aug. 30, 2004) (applying Pennsylvania law). Following dissolution of their domestic partnership, the parties in *Swails* sought partition of real estate that they held as joint tenants with a right of survivorship. One of them, Haberer, had paid $78,390.59 of the purchase price from the proceeds of the sale of her home in Florida. *Id.* at *3, 7. The court held that each party was entitled to one-half of the net value of the property, minus "expense credits" for "[r]esidence-related expenses" calculated under Rule 1570(a)(5), and it credited Haberer with half of the $78,390.59 that she contributed toward the purchase price, along with half of other amounts Haberer paid for such things as insurance and taxes. *See id.* at *7 & n.4. Federal decisions like *Swails* and cases from other jurisdictions are not precedential in this Court, but we have surveyed them in light of the dearth of Pennsylvania appellate authority on this issue. We may look to such decisions "for guidance to the degree we find them useful and not incompatible with Pennsylvania law." *Newell v. Mont. W., Inc.*, 154 A.3d 819, 823 n.6 (Pa. Super. 2017).

amount of the wife's portion of the mortgage payment" that was made by the husband, explaining that a credit is required for mortgage payments because "they increase the equities of both parties." Payment of purchase money or a down payment increases equity in a similar way.[11]

No state appellate decision has ever discussed the propriety of allowing these credits under Rule 1570(a)(5), but we agree with the trial court that the allowance of credits in that rule for "other amounts paid" is broad enough to encompass credits for down payments and purchase money. We are guided on this question by those Rules of Civil Procedure that instruct about how the rules should be interpreted. A rule's words and phrases "shall be construed . . . according to their common and approved usage," Pa.R.C.P. 103(a), and "to give effect to all its provisions," Pa.R.C.P. 127(b). Rule 103(b) provides that "[g]eneral words shall be construed to take their meanings and be restricted by preceding particular words," but, although Rule 1570(a)(5)'s use of the phrase "other amounts paid" is indeed general, there are no restricting words in that rule to constrain the phrase's interpretation, other than the rule's statement that the credit authorized by the rule "should be made[] in favor of or against any party because of use and occupancy of the property." As the trial court pointed out, there is

---

[11] Courts in other jurisdictions have permitted credits for acquisition costs paid by one co-tenant for the benefit of another where such credits are appropriate to assure that each party in a partition action receives an equitable share. *See*, *e.g.*, *Brooks v. Allen*, 137 A.3d 404, 410-11 (N.H. 2016); *Brady v. Varrone*, 884 N.Y.S.2d 175, 177 (N.Y. App. Div. 2009).

nothing in the language of Rule 1570(a)(5) that would suggest that purchase money may not be credited.

The intent of the Supreme Court in promulgating a rule is controlling, Pa.R.C.P. 127(a), and if there is doubt as to a rule's meaning, "prior practice" may be consulted as an interpretative tool, Pa.R.C.P. 127(c)(5). This guidance makes the Supreme Court's decision permitting the crediting of purchase money in **Weiskircher**, 93 A. 1068, particularly relevant as an indicator of practice in partition actions prior to Rule 1570's promulgation. In addition, although this Court's decision in **Nicholson**, 855 A.2d 97, did not discuss whether the recovery of acquisition costs was a credit for "other amounts paid" pursuant to Rule 1570(a)(5), no other basis for the credit is apparent from that opinion. Indeed, in **Ramsey v. Taylor**, 668 A.2d 1147, 1150 (Pa. Super. 1995), we noted that Pa.R.C.P. 1570 "ensures that any charges or credits for monies [a party] advanced will be considered in the partition proceeding." An interpretation of Rule 1570(a)(5) permitting credits for down payments therefore is consistent with this Court's jurisprudence under the rule.

We therefore conclude that the rules and case law permit credits for purchase money when calculating an owelty. However, there is a competing line of authority that places significant constraints on a court's ability to allow such credits where, as here, the co-tenants seeking partition acquired the property together in a deed. These authorities place overriding

significance on the language of the deed by which the property being partitioned was acquired.

In a series of decisions in the mid-1900s — *Maxwell v. Saylor*, 58 A.2d 355 (Pa. 1948); *Teacher v. Kijurina*, 76 A.2d 197 (Pa. 1950); and *Bove v. Bove*, 149 A.2d 67 (Pa. 1959) — the Supreme Court emphasized that the interests of joint owners of property are fixed by the language of the deed under which the owners acquired that property, and that extrinsic evidence may not be used to try to vary the owners' respective interests. In particular, in both *Teacher* and *Bove*, the Court rejected efforts to establish that a party's interest depended on how much that party contributed toward the purchase price of the property. *Teacher* was a dispute between a decedent's heirs and her paramour regarding rights to a farm that the decedent and paramour had purchased by a deed that falsely said they were married. The trial court awarded the property to the paramour on the ground that his payment of the entire purchase price showed that the couple intended to create a joint tenancy with survivorship rights, but the Supreme Court rejected that reasoning and held that the paramour's rights were determined by the language of the deed alone (which the court held to create a tenancy in common). 76 A.2d at 200-02. *Bove* involved similar facts and reiterated the same result: "which one of two unmarried joint tenants . . . supplied or largely contributed the purchase price for their jointly held property[] has no probative value whatsoever in determining whether or not the deed for the property evidences an intention on the part

of the grantees to create a joint tenancy in themselves with right of survivorship." 149 A.2d at 68.

These Supreme Court cases were not partition actions, but this Court has applied their holdings when partitioning property. In **DeLoatch v. Murphy**, 535 A.2d 146, 150-51 (Pa. Super. 1987), Arnold Murphy and Ethelcora DeLoatch purchased property as "tenants by entireties," although they were not married to each other. Murphy paid all expenses associated with the property, including the down payment and closing costs — except for DeLoatch's payment of a single $25 deposit toward the purchase price. After the parties separated, DeLoatch sued to compel partition, claiming an entitlement to one-half of the property. The trial court held that DeLoatch was entitled to only the $25 that she contributed as a deposit and that, upon payment of that "owelty," the real estate would be awarded to Murphy. **Id.** at 147-48.

On appeal, we reversed in light of **Maxwell**, **Teacher**, and **Bove**. We held that the deed made DeLoatch a joint owner of the property[12] and that "[t]he contributions of the parties . . . was not a relevant consideration in determining the interests created by the deed." 535 A.2d at 149. Rather, we stated, "in the absence of fraud, mistake or accident, the court should

---

[12] Because the parties were not married and DeLoatch died during the pendency of the partition litigation, we held that the estate should be partitioned as a tenancy in common. **DeLoatch**, 535 A.2d at 148-50.

have found that the wording of the deed, when coupled with the judgment in partition, operated to convey a one-half interest to appellant in the land and partitioned the property accordingly." *Id.* In support of this holding, we cited *Banko v. Malanecki*, 451 A.2d 1008 (Pa. 1982), in which the Supreme Court held that creation of a joint bank account "is prima facie evidence of the intent of the party funding the account to make an inter vivos gift to the other joint tenant." *See id*. at 1010.[13] We directed that "the property must be partitioned between the parties without regard to their respective contributions toward its acquisition and in accord with the decision[] in *Banko*." *DeLoatch*, 535 A.2d at 150-51. Our opinion did not discuss calculation or payment of any owelty on remand or whether Murphy could receive a credit for his down payment (his "respective contribution[] toward [the property's] acquisition"); significantly, however, in *Banko*, the decision that we directed the trial court to follow, the Supreme Court did not permit reimbursement of payments made to fund the joint account at issue. *See Banko*, 451 A.2d at 1011.

---

[13] In *Banko*, William Banko and Gail Malanecki, who lived together but were not married, signed a deposit contract that established a joint bank account. Banko funded the account with $5,200; Malanecki did not deposit any funds. When the parties separated, Malanecki withdrew all of the money in the account, and Banko then sued for reimbursement of the amount he deposited. The Supreme Court held that establishment of the joint account evidenced a gift of the deposits to Malanecki. 451 A.2d at 1009-10. The court awarded Banko $2,600 — one-half of the funds in the account at the time of Malanecki's withdrawal; it did not grant his request for reimbursement of the full amount of his deposits. *See id.* at 1011 & n.7.

We addressed this issue again in **Moore v. Miller**, 910 A.2d 704, 705 (Pa. Super. 2006).  George Moore and Betty Miller, who were unmarried, purchased property as tenants in common, and Miller paid the entire $65,700 purchase price.  When Miller died and her heirs claimed an interest in the property, Moore filed for partition.  Moore claimed that Miller intended to make a gift to him of a one-half interest in the property, but the trial court held that Moore failed to prove that claim.  **Id.** at 707.  The court found that the property's market value was $60,000 and that Miller's heirs were entitled to a "credit" for the $65,000 that Miller had paid.  Because that credit exceeded the property value, Moore was required to transfer title to his half interest to Miller's heirs (the opinion does not specifically discuss payment of an "owelty").  **Id.** at 705-06.

On appeal, we reversed, explaining that the trial court erred in looking for extrinsic evidence of Miller's intent to make an inter vivos gift to Moore because the deed creating joint ownership already settled the question of Moore's rights.  We held that, under **Teacher**, a deed reciting that the property is jointly owned is the **sole** determinant of ownership rights, and evidence of which of the joint owners paid for the property is "not competent."  **Id.**, at 708 (quoting **Teacher**, 76 A.2d at 200); **see id.** at 709 ("the estate drawn in the recorded deed is *prima facie* evidence of intent of a tenancy in common").  Accordingly, the trial court erred in giving Miller's heirs a credit for payment of the purchase price and thereby depriving Moore of his half-interest in the property.

Benshoff argues that these cases preclude giving Kapcsos a credit for the money he contributed toward the purchase price. According to Benshoff, the fact that the deed conveyed the Property to her and Kapcsos as joint tenants determines that she is entitled to half of the Property's value, without regard to how much Kapcsos paid when they made the purchase. The language of the deed supports Benshoff's argument. The deed states that the property was conveyed to Kapcsos and Benshoff ("Grantees") "as joint tenants with the right of survivorship." In addition, it says that the $93,000 purchase price was paid "by the said Grantees," without any mention of which of them contributed the funds. There is nothing in the deed to suggest that Benshoff is not entitled to an equal interest in the Property. Rather, the deed, interpreted in light of *Teacher*, *Bove*, *DeLoatch*, and *Moore*, suggests that Kapcsos' payment toward the purchase price evidenced a gift to Benshoff and that "the property must be partitioned between the parties without regard to [that payment] and in accord with the decision[] in *Banko*," which denied a request for reimbursement of the amount paid. *DeLoatch*, 535 A.2d at 150-51. On similar facts, we disallowed a credit for the purchase price in *Moore*.

The trial court recognized that, under *DeLoatch*, the fact that the parties were joint tenants gave each a right to a one-half interest in the Property, "as contributions made to the purchase were not relevant in determining the interest created by the deed." Trial Ct. Op., 4/6/16, at 5. Therefore, in partitioning the property, the court began by dividing the

equity value of the property in half. Findings of Fact & Conclusions of Law, 7/13/15, at 3, 5 ¶¶ 22, 25. But by then crediting Kapcsos for his $22,322.56 contribution to the purchase price,[14] the court negated that equal division. A share of the property equal to one-half of the equity (which is what the deed required) is not the same as a share equal to one-half of the equity minus $22,322.56, which is what Benshoff ended up with under the court's calculation. By allowing that adjustment, the trial court significantly diminished the value of the interest to which Benshoff is entitled under the deed.

The trial court explained that it gave Kapcsos the credit as a matter of equity. The court made a Finding of Fact that, "by making these payments out of personal funds[,] Kapcsos made a payment that inured to the benefit of Benshoff" and was entitled to a credit for that reason. Findings of Fact & Conclusions of Law, 7/13/15, at 5 ¶ 24(c). The court explained that "[i]t would be unjust not to credit Kapcsos for these payments since he provided over $22,000 to the down payment and jointly and severally obligated

_____

[14] The trial court did not explain why, although Kapcsos owns a half interest in the property, it reduced Benshoff's owelty by the full $22,322.56 payment paid by Kapcsos, rather than by just the half of that amount that benefited Benshoff. Because we hold that Kapcsos was not entitled to any credit for the $22,322.56, we need not address whether, in cases where a credit is permissible, it should be for the full amount or half of it. *See*, *e.g.*, *Weiskircher*, 93 A. at 1069 (crediting half of payments); *Fascione*, 416 A.2d at 1028 (crediting half of mortgage payments). *But see Nicholson*, 855 A.2d at 98 & n.2, 101-02 (allowing credit for full down payment, without discussion of this issue).

himself to the mortgage, while freeing Benshoff from the burden of contributing to the down payment," and that the payments from Kapcsos' personal funds benefitted Benshoff by reducing the mortgage. Trial Ct. Op., 4/6/16, at 6. The court added, "Benshoff would never have obtained, let alone used or occupied, the [P]roperty, albeit temporarily, but for Kapcsos' significant monetary contributions toward the [P]roperty's purchase price." *Id.* The court declared that "Benshoff should not obtain a windfall for those payments in the partition action," and it thus concluded that "equity demands a credit for these payments be given to Kapcsos." *Id.*

Partition is "an equitable remedy." *Marchetti v. Karpowick*, 667 A.2d 724, 727 (Pa. Super. 1995). As a court of equity, the trial court had authority to craft a decree that reached a just result, and our decisions in cases like *DeLoatch* did not remove that authority. We recognized as much in *Nicholson*, in which, although the trial court acknowledged that the parties purchased their property as joint tenants and therefore owned equal interests under *DeLoatch*, 855 A.2d at 99, the court nevertheless allowed an owelty credit to the party that paid the purchase price because that payment was proven to be a gift made on the condition that the parties would marry — a condition that was not fulfilled. *Id.* at 99-102. We affirmed that decision as an appropriate exercise of the trial court's discretion, observing, "Trial courts have broad equitable powers to effectuate justice and we will find an abuse of discretion only if the trial court has

misapplied the law or failed to follow proper legal procedures." *Id.* at 102 (quoting *Fonzi v. Fonzi*, 633 A.2d 634, 636-37 (Pa. Super. 1993)).

However, equitable discretion may not be exercised merely to negate a controlling rule of law. "Equity follows the law." *First Fed. Sav. & Loan Assn. of Lancaster v. Swift*, 321 A.2d 895, 897 (Pa. 1974). The equitable considerations cited by the trial court to justify crediting Kapcsos' purchase money payments are no more than a description of the inevitable consequences of Kapcsos' payment of the purchase money out of his own funds: Benshoff was freed "from the burden of contributing to the down payment," benefited from a reduction of the mortgage as a result of the down payment, and was able to use and to occupy the Property, since the down payment enabled her to afford its purchase. Trial Ct. Op., 4/6/16, at 6. If these factors alone could be used to justify an adjustment that would reduce the owelty Benshoff would receive for her half of the property value under the deed, then the holdings of *DeLoatch* and similar decisions could be swept aside in every case, because these factors would likely be present in every case. The trial court's assertion that a failure to provide Kapcsos with the credit would give Benshoff a "windfall," *id.*, adds nothing to this analysis.[15] This is not a case where the trial court found other facts specific

_____

[15] The word "windfall" suggests a result that is unfair and inequitable, but partitioning the Property according to the ownership interests to which the parties agreed when they executed the deed gives Benshoff no more than that to which the deed says she is entitled. If the parties desired that
*(Footnote Continued Next Page)*

to the parties' relationship, such as the conditional gift found by the trial court in **Nicholson**, that would support an equitable departure from the rule of **DeLoatch**. In the absence of such findings, the credit to Kapcsos was improper.

In reaching this result, we are constrained by this Court's precedents, which have endeavored to adhere to the teachings of the Supreme Court with respect to deeds and property interests. We recognize that the gift of a joint property interest under these decisions need not necessarily foreclose a legal right to reimbursement of the money paid to make the purchase; a contributor like Kapcsos may well have been willing to make a gift of half of the property ownership (including any appreciation in the property value over time) while not also gifting the actual purchase moneys too. It may even be that allowing such reimbursement would be more consistent with the expectations of most couples (or, at least, most unmarried couples) that jointly purchase property. But our decisions have not followed that course, and, unless this Court elects to reconsider its jurisprudence en banc, our task is to maintain fidelity to this Court's existing precedents.

_(Footnote Continued)_ ───────────────

Benshoff's interest match her contribution to the purchase price, they could have drafted the deed to say that. Alternatively, the parties could have executed a separate agreement providing for reimbursements in the event of their separation. In the absence of such facts in the record, it is not inequitable to award Benshoff the full amount that the deed says she owns. Under Rule 1570, any owelty shall reflect "the amount of the awards and charges which shall be necessary **to preserve the respective interests of the parties**." Pa.R.C.P. 1570(b)(2) (emphasis added).

Applying those precedents, we hold that the trial court erred in subtracting from the value of Benshoff's half interest in the Property the amount paid by Kapcsos when he and Benshoff purchased the Property. Under the deed, Benshoff was entitled to the full value of her interest in the Property, and it was error to subtract Kapcsos' payment when calculating her owelty. We therefore vacate that portion of the trial court's decree and remand for recalculation of the owelty without allowance of a credit for Kapcsos' $22,322.56 payment.

## Mortgage Payments

Benshoff's second issue is "whether a party's mortgage payments are relevant in determining his share of the partitioned real property" and, if so, whether "the [trial] court err[ed] in not awarding [Benshoff] credit for her mortgage payments . . . made between May 2008 and July 2010." Benshoff's Brief at 12.

As previously discussed, this Court held in **Fascione**, 416 A.2d at 1028, that a co-tenant is entitled to a credit for one-half of mortgage payments made on the Property.[16] **Accord Weiskircher**, 93 A. at 1068

---

[16] **Fascione** was an action in equity between a husband and wife who had separated and were disputing their respective rights to the marital property. The Court held that the parties, by their actions, destroyed their tenancy by the entireties and made their property subject to division. The Court left to the chancellor the proper division of the property, but directed that because mortgage payments "increase the equities of both parties," the wife who was excluded from the real estate had to reimburse her husband for one-half of those payments. 416 A.2d at 1028. In a separate opinion, Judge Spaeth
*(Footnote Continued Next Page)*

(allowing credit for one-half of mortgage payments); *see also Hickman's*

*Estate*, 40 Pa. Super. 244, 248 (Pa. Super. 1909). Benshoff cites no law to

the contrary.[17] We therefore hold that the trial court did not err in crediting

Kapcsos for one-half of the mortgage payments that he made.

Benshoff argues that if Kapcsos may receive credits for mortgage

payments made by him, then she should be credited for any such payments

made by her. The trial court found, however, that Benshoff "failed to prove

[her] claim" regarding payments for which she should be credited. Trial Ct.

Op., 4/6/16, at 4. The trial court stated:

> A review of the testimony in this matter reveals that Benshoff
> presented no evidence of the amount of those payments[,]
> preventing the Court from calculating the amount of any credit
> to which she might be entitled. N.T. 5/27/15. Accordingly, as
> Benshoff failed to meet her burden of proof on this issue there
> was no error in not awarding her a credit for the mortgage
> payments she made.

*(Footnote Continued)* ─────────────

opined that the majority's discussion of this issue was premature because
the chancellor would be partitioning the real estate on remand and would
then be making findings of fact under Rule 1570(a)(5) regarding what
credits were due to the husband as part of the adjudication. Judge Spaeth
added, however, that he had "little doubt that when the lower court files its
adjudication pursuant to Pa.R.C.P. 1570(a)(5), it will find that the husband is
entitled to reimbursement from the wife for a proportionate share of the
mortgage payments." *Id.* at 1029.

[17] Although there may be a tension between allowing credits for mortgage
payments while not allowing them for down payments, since each type of
payment increases equity in the property, we have been made aware of no
decisions extending the holdings of cases like *DeLoatch* to mortgage
payments. The *DeLoatch* line of cases is based on the theory that a gift
arises from the tender of purchase monies and creation of a joint tenancy in
the deed. That theory does not apply to payments made after the joint
tenancy has been created.

*Id.*

This Court is "bound to accept the findings of the trial court," **Nicholson**, 855 A.2d at 100, and must "consider the evidence in a light most favorable to the verdict winner," **Richards**, 152 A.3d at 1034. Moreover, our thorough review of the record confirms that the trial court is correct — Benshoff presented no evidence of any amount that she claims to have independently contributed to pay off the mortgage on the Property. Hence, we find no error in the trial court's conclusion, and, thus, the second issue raised by Benshoff is meritless.

Judgment vacated. Order allocating owelty from Kapcsos to Benshoff upon partition affirmed in part and vacated in part. Case remanded for further proceedings not inconsistent with this opinion. Jurisdiction relinquished.

Judge Lazarus joins the opinion.

Judge Strassburger files a concurring opinion.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/29/2017

- 28 -